## CARPENTER *v.* WINN.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 135. Argued April 20, 21, 1911.—Decided May 29, 1911.

Section 724, Rev. Stat., has never been construed by this court, and the decisions of the inferior courts have not had such uniformity as to exert any controlling influence.

The word "trial" as used in § 724, Rev. Stat., refers to the final examination and decision of matter of law as well as facts, for which every antecedent step is a preparation.

A court of equity does not lose its jurisdiction to entertain a bill for the discovery of evidence or to enjoin the trial at law until obtained, because the powers of the courts of law have been enlarged so as to make the equitable remedy unnecessary in some circumstances.

Under § 724, Rev. Stat., a court of law cannot compel one party to an action to produce, in advance of the trial, books and papers for examination and inspection of the other party.

165 Fed. Rep. 636, reversed.

In an action wherein David J. Winn was plaintiff and Joseph N. Carpenter, and others, defendants, the plaintiff Winn obtained an order from the court requiring the defendants to produce certain books and papers said to contain evidence material to make out the plaintiff's case. The order required the defendants to produce "all of their books, papers, writings, account books, day books, blotters, journals, registers, cash books, check books, contracts, contract slips and memoranda, made or received by them, their agents and employés, which contain any memoranda of any business transactions," relating to the plaintiff during the years 1905 and 1906, and particularly pertaining to a certain brokerage transaction in cotton. The order required such production before the trial, and that the plaintiff and his attorneys should be allowed, at the office of the defendants, within a time named, access to such books and papers, with leave to "examine and investigate the same and to make copies and extracts from such books, documents and writings." The order concluded thus: "In the event the defendants fail to comply with this order, judgment against them shall be entered by default."

The defendants conceiving that the court had no authority to require the production of their business books and correspondence before the trial of the cause for the investigation of the plaintiff, declined to obey the order. Thereupon judgment by default was entered and a jury empanelled to assess the plaintiff's damages, which being done, there was judgment for the plaintiff for the amount so assessed. This judgment was affirmed by the Circuit Court of Appeals and the case has come here upon a writ of certiorari.

*Mr. John R. Abney* for petitioners:

The decision of the court below in the case at bar is in direct conflict with the prior decisions of the Circuit Courts of Appeals for the Third and other Circuits construing said section, and is also in direct conflict with the plain language of the statute. See 1 Annals of Cong. 1846, 48, 49, 80, 74, 659, 903; Journal of Maclay, 74, 85, 117, 150; 1 Annals of Cong. 782–894; *Geyger's Lessee* v. *Geyger*, 2 Dallas, 332; Carson's Hist. of Supreme Ct. 184; *Hylton* v. *Brown*, 1 Wash. C. C. 298; *Bas* v. *Steele*, 3 Wash. C. C. 381; *Dunham* v. *Riley*, 4 Wash. C. C. 126; *Central Bank* v. *Tayloe*, 2 Cranch C. C. 427; *Triplett* v. *Bank*, 3 Cranch C. C. 646; *Waller* v. *Stewart*, 4 Cranch C. C. 532.

It appears that it became the practice to order the books produced at the trial. Judge Betts of New York, sitting in the Circuit Court, held that the plaintiff could be required to show his papers to the defendant before the trial. He so decided under the influence of the rule which permitted it in the state courts of New York. *Jacques* v. *Collins*, 2 Blatch. C. C. 23. But see *Finch* v. *Rikeman*, 2 Blatch. 301; *Iasigi* v. *Brown*, 1 Curtis, 401; *Merchants' Nat. Bk.* v. *State Bk.*, 3 Cliff. 201.

In 1879, it was held that inspection of books could be had before the trial, under the influence of the state practice. *United States* v. *Youngs*, 10 Ben. 264; *United States* v. *Hutton*, 10 Ben. 268; but in 1885, it was held, citing *Beardsley* v. *Littel*, 14 Blatch. 102, that § 724 did not permit an examination of a party's books before trial. *Colgate* v. *Compagnie Francaise*, 23 Fed. Rep. 82; and see also *Guyot* v. *Hilton*, 32 Fed. Rep. 743. Thus the question seemed settled in the Southern District of New York that an inspection of books was not authorized under § 724 before the trial.

But in 1899 an inspection of books and papers before trial was allowed by the District Judge in Delaware.

*Bloede* v. *Bancroft*, 98 Fed. Rep. 175, and followed by Mr. Justice Lacombe in *Gray* v. *Schneider*, 119 Fed. Rep. 474.

For other cases on this point, see *United States* v. *Nat. Lead Co.*, 75 Fed. Rep. 94, 95; *Kirkpatrick* v. *Pope*, 61 Fed. Rep. 46, 47, 49; and the Circuit Court of Appeals held that § 724 does not confer the power to require a party to produce books before trial in *Cassatt* v. *Mitchell C. & C. Co.*, 150 Fed. Rep. 32, 44; and see *Penna. R. R. Co.* v. *Int. C. M. Co.*, 156 Fed. Rep. 765.

Only in connection with the other testimony in a case can the court know what right the applicant has to see books and papers and the relevancy. There is no fairness vouchsafed in a hearing of these questions on affidavits. There is no chance to see and cross-examine the affiants, and it gives an undue advantage to those who are willing to swear anything when there is no cross-examination.

From discretionary interlocutory orders in the Federal courts there is no appeal except as to injunctions and reviews. 26 Stats. 828, §§ 6, 7. In a state court there would be.

The fact that the statute provides that the party failing to show books shall suffer "nonsuit" or "default," as the case may be, shows that it was to be at the trial.

The construction placed upon § 724 by the court below would make it possible in a case pending in New York to require a party living in California to produce his books in New York before the trial, and also at the trial.

The act should be construed under the lights then existing.

The petitioners have a right to keep their books and papers a secret under the common law and the Constitution, and § 724 should be construed strictly, like an attachment statute. *Entrich* v. *Carrington*, 19 Howell St. Tr. 1029; *Boyd* v. *United States*, 116 U. S. 616, 626, 627.

Congress having provided for discovery, there is no other authority. The statute of New York and the practice in that State cannot affect the question. *Ex parte Fisk,* 113 U. S. 713; *Amy* v. *Watertown,* 130 U. S. 301 · *Pierce* v. *Un. Pac. R. Co.,* 47 Fed. Rep. 709.

*Mr. John W. Boothby,* with whom *Mr. Ernest E. Baldwin* was on the brief, for respondent.

MR. JUSTICE LURTON, after making the foregoing statement of the case, delivered the opinion of the court.

The question is whether under § 724 of the Revised Statutes, a court of law may compel one party to an action to produce, in advance of the trial, books and papers for examination and inspection of his adversary.

Section 724 is substantially the fifteenth section of the Judiciary Act of 1789. It reads as follows:

"In the trial of actions at law, the courts of the United States may, on motion and due notice thereof, require the parties to produce books or writings in their possession or power, which contain evidence pertinent to the issue, in cases and under circumstances where they might be compelled to produce the same by the ordinary rules of proceeding in chancery. If a plaintiff fails to comply with such order, the court may, on motion, give the like judgment for the defendant, as in cases of nonsuit: and if a defendant fails to comply with such order, the court may, on motion, give judgment against him by default."

The purpose of the provision is to provide a substitute for a bill of discovery in aid of a legal action. It may be invoked only when the document sought "contains evidence pertinent to the issue," and "in cases and under circumstances when they might be compelled to produce the same by the ordinary rules of proceeding in chancery." The penalty for failing to comply with such an order is

exceedingly stringent, that of a nonsuit or a judgment by default.

For more than a century trial courts have disagreed as to whether under this enactment the procedure is limited to a requirement that the books, documents and writings be produced at the trial, or, in the discretion of the court, before the trial, for such investigation and examination as the party obtaining the order might desire.

The contention upon the one side is that "in the trial" does not mean "at the trial," or, "during the trial," but at any time after issue joined.

The doubt about the meaning of the provision is engendered by the use of the words "in the trial." It is, of course, urged that if the Congress had intended to limit the right to such production, it would have said "at the trial," or "on the trial." But it is said with equal force that if the purpose was to compel such production before the trial and after issue joined, Congress would have substituted the words, "in an action at law," instead of using words seemingly more restrictive.

But taking the words as written, what must we infer Congress to have meant by empowering the court to compel production "in the trial"?

Some of the considerations which collectively lead us to conclude that the words "in the trial" mean "on or at the trial" are these:

*a.* The significance of the word "trial." Does that word embrace anything more than is commonly understood when we speak of the "trial" of an action at law? Or does it include, as contended here, every step in a cause between issue joined and that judicial examination and decision of the issues in an action at law, which we always refer to as the trial?

Blackstone defines "trial" to be the examination of the matters of fact in issue. 3 Bl. Com. 350. This definition is adopted by Bouvier. In *Miller* v. *Tobin,* 18 Fed. Rep.

609, 616, Judge Deady applied this meaning to the removal act, saying, "Trial is a common-law term, and is commonly used to denote that step in an action by which issues or questions of fact are decided." But the word has often a broader significance, as referring to that final examination and decision of matter of law as well as fact, for which every antecedent step is a preparation, which we commonly denominate "the trial." Many cases are cited for this definition in 28 Am. & Eng. Ency., p. 636. But this does not help out those who would broaden the meaning so as to justify an order to produce before such judicial examination of both matters of fact and law which constitute that final step which is called "the trial."

*b.* "In the trial" implies a restricted use of the procedure as compared to a bill of discovery.

Under the ordinary rules of procedure in chancery to obtain a discovery of evidence material to the maintenance or defense of an action at law, such evidence must, in the very nature of things, result in production before the "trial" at law. Such procedure is still open if it is desired to have the evidence produced before the trial. A court of equity does not lose its jurisdiction to entertain a bill for the discovery of evidence or to enjoin the trial at law until obtained, because the powers of the courts of law have been enlarged so as to make the equitable remedy unnecessary in some circumstances. See the very instructive discussion of the question by Judge Wallace in *Colgate* v. *Compagnie Francaise &c.*, 23 Fed. Rep. 82.

In *Guyot* v. *Hilton*, 32 Fed. Rep. 743, an application under § 724 to require the plaintiff to produce for the inspection of the defendants the business books of the plaintiff's firm for certain years "in order to enable them to prepare for trial," was denied, Judge Lacombe saying that the proper practice to obtain such relief was by a bill in equity for discovery.

The statute may therefore be well regarded as affording

a short and quick way of obtaining documentary evidence for use "in the trial" of an action at law, leaving the parties to a bill of discovery if they desire the production before the trial for the purpose of preparing for it.

c. Another consideration leading to the same conclusion is found in the fact that a bill of discovery cannot be used merely for the purpose of enabling the plaintiff in such a bill to pry into the case of his adversary to learn its strength or weakness. A discovery sought upon suspicion, surmise or vague guesses is called a "fishing bill," and will be dismissed. Story, Eq. Pl., §§ 320 to 325. Such a bill must seek only evidence which is material to the support of the complainant's own case, and prying into the nature of his adversary's case will not be tolerated. The principle is stated by a great authority upon equity thus: "Nor has a party a right to any discovery except of fact and deeds and writings necessary to his own title under which he claims; for he is not at liberty to pry into the title of the adverse party." Story, Eq. Juris., § 1490; *Kettlewell* v. *Barstow*, 7 Ch. App. Cas. 686, 694. In *Ingilby* v. *Shafto*, 33 Beav. 31, it was said:

"The province of discovery in equity is not to compel a defendant, who is a plaintiff in a suit at law, to disclose in what manner he intends to make out his case at law. The plaintiff in equity is entitled only to the discovery of such matters in the knowledge, or possession, of the defendant in equity, as will enable him to make out his own case at law; and exceptions to an answer, omitting to respond to inquiries touching the mode in which the defendant purposed to make out his case at law, and as to documents 'relating to matters in the bill mentioned,' were overruled."

This "fundamental rule," as it is called by Judge Story in his work upon Equity Pleading, § 317, in view of the express limitation of the section, "to cases and under circumstances" when discovery might be obtained in equity,

implies that production of an adversary's documents should not be required before trial, that one party may examine and inspect in search of evidence which he may or may not use in the trial.

*d.* Another consideration arises from the very stringent penalty which is to result if the judge shall conclude that the documents desired have not been produced. The party against whom such an order is sought has the undoubted right to make every objection which he could make were he a defendant in equity to a bill seeking discovery of the same evidence, for the right to compel production is no broader under the statute than under a discovery proceeding in equity. This would include the right to insist that the case, the circumstances and the purpose to be advanced were not such as to justify the order. He must also be heard, if he desires, upon the pertinency of the evidence which is being sought and the right to insist that he be not required to disclose that which pertains only to his side of the case, but only that which is material to make out the case of the party seeking the order.

When, where and how are these important questions to be heard and decided? If heard by the court in advance of the trial, it will often be necessary that it shall possess itself of that kind of knowledge of the case which can be had only on the trial where the evidence is to be produced. This in many cases will practically require two trials, one before the jury is empanelled, another after. Opportunities for a miscarriage of justice, as well as inconvenience to the trial judge, may be reduced to a minimum by making an order to produce at the trial, or there show cause why he should not. *Bas* v. *Steele*, 3 Wash. C. C. 381; *Dunham* v. *Riley*, 4 Wash. C. C. 126.

In *Bas* v. *Steele* the order was to produce at the trial. Nothing is said in the opinion of Mr. Justice Washington about production before the trial, but the construction of

the act by the learned Justice furnishes practical reason for construing the statute as we have indicated. Construing the section he said:

"It is not difficult to give a construction to the section of the act of Congress. When either party wants papers, he must give notice; and he has in view one of these objects: 1st. That if the papers called for are not produced, he may be enabled to argue against the party not producing them to the jury; 2d. This object may be to obtain evidence from the contents of the papers called for; and, 3d. To move the court for a nonsuit, or for a judgment by default, as the case may be. But in either case, the party must entitle himself to the benefits of the section, by showing that the party was in possession of the papers called for; and he must also give evidence of the contents of the papers; for it will not do for him only to say what those contents are. The court will require reasonable proof of the possession, and of the pertinency of the papers. If the object of the party is to avail himself of the provision of the section, so as to move for a nonsuit, or for judgment by default, he must put the party on his guard, and let him know the consequences of a refusal; and the party receiving such notice, will come prepared to meet it. In any such case, when the party is called on to produce papers, he may make oath that he has them not; and thus extricate himself from difficulty. This is the case in chancery, where the plaintiff charges the defendant with having papers to which he has a right, and the defendant relieves himself by his oath; and this may be met by contrary proof of two witnesses. In every case, the party claiming the papers must give evidence of the relevancy of the papers, and of the opposite party having possession of them. Whenever a judgment by default, or nonsuit, is intended to be claimed, the notice to produce papers, must give the party information that it is intended to move for a nonsuit, or a judgment by default, as the case may be;

and this must hereafter be considered as the rule of the court, under this section of the act of Congress."

In *Dunham* v. *Riley* the order was to produce on the trial. Reasons for making the rule *nisi* instead of absolute are given by Mr. Justice Washington, who said:

"But the court [in *Bas* v. *Steele*] did not decide whether such order must be absolute in the first instance. We think it need not be so; but that upon the rule to show cause, it may be made *nisi;* leaving the court at liberty to enforce the rule, unless the plaintiff can show, at the trial, good cause for not producing them. If the rule be made absolute at the time when it is argued, the court might have to go prematurely into an inquiry into the case, in order to decide whether the order should be absolute or not."

The statute has never been construed by this court, and the practice and decisions of the inferior courts have no such uniformity as to exert any controlling influence. There are perhaps as many cases upon one side as upon the other. We shall therefore refer to but a few of them.

The Third Circuit Court of Appeals construes the statute as requiring production only on the trial. *Cassett* v. *Mitchell*, 150 Fed. Rep. 32, 44; *Penna. R. R. Co.* v. *International Coal Co.*, 156 Fed. Rep. 765, 769.

The Circuit Court of Appeals for the Second Circuit reached an opposite conclusion in the case now before us.

Since *Jacques* v. *Collins*, 2 Blatch. C. C. 23, decided in 1845, the United States courts for the New York districts have generally followed the broad interpretation of Judge Betts, an interpretation which was plainly influenced by the practice in the courts of the State of New York under a state statute dealing with the matter. It is significant that in *Jacques* v. *Collins* there was no opposition to the rule to produce before trial and no consideration given to the practice under the statute in courts of the United States.

In *Bloede* v. *Bancroft*, 98 Fed. Rep. 175, though since overruled by the Circuit Court of Appeals for the Third Circuit, there is to be found a review of most of the cases bearing upon the subject.

The conclusion which we reach as to the meaning of the statute finds support in many reported cases, which, although no more numerous than those upon the other side, are entitled, as we conceive, to the greater weight as precedents. The very early practice under what was then known as the fifteenth section of the Judiciary Act of 1789, as shown by *Geyger's Lessee* v. *Geyger*, 2 Dallas, 332; *Hylton* v. *Brown*, 1 Wash. C. C. 298; *Triplett* v. *Bank*, 3 Cranch C. C. 646, and *Dunham* v. *Riley*, 4 Wash. C. C. 126, was to direct the production of books and documents at the trial. The very first reported opinion under the section, the *Geyger Case* cited above, was by Mr. Justice Patterson, one of the sub-committee of the Judiciary Committee of the Senate which framed the act. The order in that case was one requiring production on the trial of the action. *Hylton* v. *Brown*, 1 Wash. C. C. 298; *Bas* v. *Steele*, 3 Wash. C. C. 381, and *Dunham* v. *Riley*, 4 Wash. C. C. 126, were cases in which Mr. Justice Washington presided. Some of the observations of the Justice in *Bas* v. *Steele* and *Dunham* v. *Riley* have already found a place in this opinion. Two other of the early practice cases worthy of notice are *Triplett* v. *Bank*, 3 Cranch C. C. 646, and *Wallar* v. *Stewart*, 4 Cranch C. C. 532.

In 1853 the interpretation of this section of the Judiciary Act came before Mr. Justice Curtis, and his view of the question is found in *Iasigi* v. *Brown*, 1 Curtis C. C. 401. There was a motion, based upon affidavits, to compel the production and delivery to the clerk of the court of certain documents alleged to contain evidence material to the issues in a pending action. The opinion was upon this motion. The Justice said:

"By the common law, a notice to produce a paper,

merely enables a party to give parole evidence of its contents, if it be not produced. Its non-production has no other legal consequence. This act of Congress has attached to the non-production of a paper, ordered to be produced at the trial, the penalty of a nonsuit or default. This is the whole extent of the law. It does not enable parties to compel the production of papers before trial, but only at the trial, by making such a case, and obtaining such an order as the act contemplates. The applicant must show that the paper exists, and is in the control of the other party; that it is pertinent to the issue, and that the case is such that a court of equity would compel its discovery.

"The application for such an order may be made, on notice, before trial. There is a manifest convenience in allowing this. But, at the same time, I think the court should not decide finally on the materiality of the paper, except during the trial; because it would occupy time unnecessarily, and it might be very difficult to decide beforehand, whether a paper was pertinent to the issue, and whether it was so connected with the case, that a court of equity would compel its production. These points could ordinarily be decided without difficulty during a trial, after the nature of the case, and the posture and bearings of the evidence are seen.

"If the notice is made before the trial, the correct practice seems to me to be, after the moving party has made a *prima facie* case, to enter an order *nisi*, leaving it for the other party to show cause at the trial. He must then come prepared to produce the paper, if he fails to show cause."

In *Merchants' National Bank* v. *State Bank*, 3 Clifford, 201, Mr. Justice Clifford summarized procedure under the section. Among other things he said (p. 203):

"Those conditions are that the motion must be in a case at law, and on due notice to the opposite party, and it

must appear that the books or writings are in the possession or power of the other party, and that they contain evidence pertinent to the issue, and that the case and circumstances are such that the party might be compelled to produce the same, as therein provided. No doubt is entertained that the motion may be made, in a pending action at law, before the day of the trial; but the requirement of the order of the court must perhaps be that the books and writings be produced at the trial of the action. Such an order may be absolute or *nisi*, as the circumstances may justify or require. Production before the trial is not perhaps contemplated by the words of the provision, nor is it in general necessary, as the penalty, in case of failure to comply with the order, is not arrest and imprisonment until the party comply, as for a contempt, but a judgment of nonsuit or default, as the plaintiff or defendant is the offending party. Where the motion is accompanied by satisfactory proof that the case is one in all respects within the conditions of the provision, and it is also satisfactorily shown that there is just ground to apprehend that the books and writings may be destroyed or transferred to another, or removed out of the jurisdiction before the day of the trial, the order should be made without delay, and be absolute."

For the reasons we have stated, and upon the authorities we have cited, the judgments of both courts must be reversed.

MR. JUSTICE HUGHES dissents.