## UNITED STATES v. UNITED SHOE MACHINERY CO. OF NEW JERSEY et al.

(District Court, D. Massachusetts. August 28, 1912.)

### No. 301 (911).

EQUITY (§ 355*)—DEPOSITIONS—TAKING BEFORE EXAMINER—EQUITY RULE 67 —RIGHT OF PUBLIC TO ATTEND.

The taking of depositions before an examiner in an equity suit under equity rule 67 (29 Sup. Ct. xxxiii) is not a judicial trial, nor a part of a trial, but a proceeding preliminary to a trial, and neither the public nor representatives of the press have a right to be present at such taking. Until a deposition has been presented to the court, it does not become evidence in the case, nor has either party until then an opportunity to be heard upon the question of the competency, materiality, or relevancy of the statements made by the witness, and the public can have no right to know what the testimony is until the court knows what it is.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 739–742; Dec. Dig. § 355.*]

In Equity. On the question of the right of the public and press to be present during the taking of testimony before an examiner. Right denied.

Asa P. French, U. S. Atty., Edwin H. Abbot, Jr., Sp. Asst. U. S. Atty., and W. S. Gregg, Sp. Asst. Atty. Gen.

Charles F. Choate, Jr., Walter Bates Farr, and H. G. Donham, all of Boston, Mass., for defendants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

BROWN, District Judge.  The United States, having given notice that it desires evidence to be taken orally under the sixty-seventh rule in equity (29 Sup. Ct. xxxiii), contends that the public and the press should be admitted to the proceedings wherein the depositions of witnesses are to be taken before the examiner.

It is urged that the public and press should be afforded an opportunity to attend and to hear whatever may be said upon the examination before it has been reduced to writing and signed by the witness, and before the deposition is presented to the court.  This contention is not supported by the citation of any authority, and is so contrary to the usual practice both at law and in equity that it might be summarily disposed of save for the statement of the United States attorney that in cases under the Sherman Act such a course has been followed.  The cases cited by the United States which uphold the undisputed principle of publicity in trials and in judicial proceedings do not in the slightest degree support the contention of the United States, and afford no assistance upon the question before us.  This question is whether the public and the press should be admitted to the taking of depositions for use at a trial not then begun, but which is to take place in the future.

The question is easily solved upon a consideration of the essential difference between a trial or a judicial proceeding held by an officer with judicial authority, and the merely preliminary step of taking depositions.  •

Equity rule 67 provides that the examination shall take place in the presence of the parties or their agents, by their counsel or solicitors; that the depositions taken shall be reduced to writing by the examiner; that the testimony of each witness shall be read over to him and signed by him in the presence of the examiner and such of the parties or counsel as may attend, etc.  The examiner may note objections, but he "shall not have the power to decide upon the competency, materiality or relevancy of the questions."  The original depositions, authenticated by the signature of the examiner, must be transmitted by him to the clerk of the court, to be there filed of record, in the mode prescribed by Revised Statutes, § 865 (U. S. Comp. St. 1901, p. 663).

Rule 69 (29 Sup. Ct. xxxiv) provides that upon the return of the commissions and depositions into the clerk's office publication may be ordered by any judge of the court upon due notice to the parties, and further provides for publication by consent in writing of the parties.

The nature of this proceeding is well described in Wigmore on Evidence, § 1376 (2).  "This process of securing in advance the evidential material for a trial is a part of the preliminary procedure of courts," etc.

It is also described by Wigmore in section 1331 as "testimony given extrajudicially before a specially authorized officer for the purpose of subsequent use at a trial.  *  *  *  In a deposition the testimony *is* the writing taken down by the officer and signed by the deponent. The officer's writing is not his report of the witness' oral deposition. There is only one testimonial utterance—the writing."

Mr. Wigmore refers also to the chancery practice, saying:

"In this practice all testimony was taken in writing, and in the theory the testimony or deposition was the writing and nothing else."

The brief of the United States attorney asserts:

"The right of the public is to hear testimony, and that is not accorded when it is given merely the privilege to read it."

It is also asserted:

"There is a right of the public to hear what is being said in this case while it is being said."

It is quite apparent from what we have said that such a supposed right has never existed in the practice of the chancery courts, nor has such a right in respect to the taking of depositions ever existed at law. Both common-law judges and juries are compelled to receive testimony in the form of written depositions, and upon such written testimony of witnesses whom they have never seen nor heard may make decisions as to the rights of parties.

The public has a right to such form of testimony as the law provides shall be received at trials at law or at hearings in equity or upon other judicial proceedings. If judges and juries may not object that they have not seen and heard the witness while he was testifying, the press and public may not object.

Furthermore, neither at law nor in equity does a deposition become evidence in a case until it is offered by one of the parties; until there is an opportunity for a judicial hearing as to its competency. A party in a cause has a right to the protection of the court in a judicial hearing. In the proceedings before an examiner such right is not afforded him. No question of right is submitted to the examiner, and under the provision of equity rule 67 and under the doctrine of Blease v. Garlington, 92 U. S. 1, 7, 23 L. Ed. 521, the examiner must take down all the examination in writing. The party has the right to have his exceptions noted and to file further exceptions when the deposition is filed in court.

"The testimony is taken to be submitted to the court where the suit is pending, and all questions upon the evidence, its materiality and sufficiency, are to be determined by it, and after it by an appellate court." Nelson v. United States, 201 U. S. 92, 26 Sup. Ct. 358, 50 L. Ed. 673.

The only opportunity for redress which the party has against improper or irrelevant testimony follows the filing of the deposition. If all is to be made public before it is reduced to final form in writing and before there is an opportunity for a hearing upon the propriety and competency of the testimony, all effective protection against scandal, impertinence, and irrelevancy is practically gone.

When justice is being administered by a judicial officer, the public is entitled to attend, save under exceptional conditions, with which we need not deal.

In Cowley v. Pulsifer et al., 137 Mass. 392, 50 Am. Rep. 318, Mr. Justice Holmes considered the question of the policy of publicity, and marks the distinction between what takes place in open court and the

filing in the clerk's office of a petition containing a written preliminary charge. Of such preliminary steps he said:

"These do not constitute a proceeding in open court. Knowledge of them throws no light upon the administration of justice."

Due process of law requires that the parties have an opportunity to be heard. For the court to enforce a rule that the public and the press shall have an opportunity to listen before the parties to the case have an opportunity to be heard would be a plain violation of elementary rules of fair play. The proceeding before the examiner lacks the essential element,—an opportunity to be heard by a judicial officer and to submit questions of right to a judicial officer.

Furthermore, another essential difference is that upon a trial or judicial proceeding the rights of the parties are submitted for an adjudication. A party in equity ordinarily may dismiss his bill at any time before final hearing. Houghton v. Whitin Machine Co. (C. C.) 160 Fed. 227; Morton Trust Co. v. Keith (C. C.) 150 Fed. 606. Under the view of the United States a bill may be filed, the testimony of hostile witnesses may be presented to an examiner, the public and the press may attend, and the complainant may then dismiss the bill, leaving the defendant no opportunity to reply or to procure an adjudication which will offset the injurious statements of witnesses. It is manifest from the nature of depositions, because they are not yet legal evidence and because the parties against whom they are taken have had no opportunity for a hearing, that the proper practice is that which has been uniformly observed. Equity rule 69 expressly provides for publication either upon the order of a judge or by consent of parties, after the return of the depositions by the examiner.

In Patterson v. Colorado, 205 U. S. 454, 462, 27 Sup. Ct. 556, 558, 51 L. Ed. 879, 10 Ann. Cas. 689, it was said:

"The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print. What is true with reference to a jury is true also with reference to a court."

Premature publication of proceedings before an examiner might make the author subject to proceedings for contempt. In Wigmore on Evidence, § 1836, the writer states that publication of proceedings may be prohibited, and—

"of palpably just grounds there are at least two: First, that the proceeding is only a preliminary or ex parte one, and that a publication would therefore give an erroneous impression of the conduct of the parties; secondly, that conditions of popular emotion exist, amid which the publication before verdict rendered would tend to excite the public mind, to cause pressure upon the minds of the witnesses, the judge, and the jury, and thus to do injustice to one of the parties by preventing a fair and unbiased investigation of the facts."

If upon these grounds a court may stop the publication of proceedings which have actually taken place in open court, it would follow that the court, were it necessary, might prohibit by order the publication of preliminary proceedings before an examiner; but such order

is not necessary, for the reason that by common understanding of the bar and bench the taking of depositions is a private and not a public proceeding.

Testimony at times must be taken out of court. Alexander v. United States, 201 U. S. 117, 26 Sup. Ct. 356, 50 L. Ed. 686. Trials are held at times and places appointed by law. Depositions may be prepared at times and places whereof no public notice is given by law or is required from the parties, at places not accessible to the public, and at places where there is no provision for the attendance of the public. The court is provided with officers for the preservation of order. The examiner, under ordinary conditions, is not so provided. Depositions are taken at deathbeds, in prisons, in remote and even foreign jurisdictions. They may be taken in many jurisdictions for a trial in another jurisdiction. Within a short time it has been reported in the public prints that depositions in cases under the Sherman Act have been taken at a room in the Parker House in Boston and at a room in the Narragansett Hotel in Providence. What truth there is in such reports we do not know, but they illustrate what may properly be done and is ordinarily done in the course of taking depositions, but what is entirely inconsistent with the contention that public policy requires the attendance of the press and the public.

The impropriety of the publication pending the suit of depositions so taken is manifest from what we have already said. It is evident that upon ordinary principles of fair play the examiner's office should not be used as a vehicle for spreading statements which have not been subjected to judicial test.

The fact that testimony orally delivered is often more satisfactory than testimony read from a document has no bearing upon the present question. The mere preference for testimony of this character yields to the considerations of convenience and necessity which justify the general law of depositions.

What is termed by Mr. Wigmore in section 1396 "demeanor evidence," while desirable, is not essential. If, in the course of a chancery suit, it is desirable to produce particular witnesses in open court in order that their demeanor may be observed, there is provision that the court may, in its discretion, "permit the whole, or any specific part of the evidence, to be adduced orally in open court on final hearing." See equity rules 67, 78 (29 Sup. Ct. xxxiii, xxxvi).

The provision in these rules is an indication that oral proceedings before an examiner are regarded as essentially different from proceedings in open court. It is quite clear that the taking of depositions, either at law or in equity, is in no proper sense a trial or a part of a judicial trial, using the term to mean "that final examination and decision of matter of law as well as fact, for which every antecedent step is a preparation, which we commonly denominate the trial." Carpenter v. Winn, 221 U. S. 533, 538, 539, 31 Sup. Ct. 683, 55 L. Ed. 842; Hess v. Reynolds, 113 U. S. 73, 80, 5 Sup. Ct. 377, 28 L. Ed. 927; Carson v. Hyatt, 118 U. S. 289, 6 Sup. Ct. 1050, 30 L. Ed. 167; Delaware County Commissioners v. Diebold Safe & Lock Co., 133. U. S. 473, 10 Sup. Ct. 399, 33 L. Ed. 674; Nelson v. United States,

201 U. S. 92, 26 Sup. Ct. 358, 50 L. Ed. 673; Cowley v. Pulsifer, 137 Mass. 392, 50 Am. Rep. 318.

In Ex parte Milligan, 4 Wall. 121, 18 L. Ed. 281, it was said: "Every trial involves the exercise of judicial power."

That the public and press should be entitled to hear what is not yet evidence and what may never become evidence before the court which is to try the case hears it is an unprecedented and unreasonable proposition. The contention that judicial proceedings shall be held with open doors is not under dispute. The proposition that the taking of depositions by an examiner, who is merely a ministerial officer, is subject to the same rule, is in our opinion manifestly erroneous.

To justify a departure from the general practice and from the requirements of the natural meaning of the equity rules of the Supreme Court, which have the force of statute, it is necessary for the United States, if unable to produce authority, to show some reasons for its position. It asserts merely the right of the public to hear testimony. The public will have that right when testimony is offered. The public interests are fully preserved from the fact that the trial in the present case must be conducted with open doors.

The defendants claim that the court is bound as a matter of positive law by the sixty-seventh and sixty-ninth equity rules, and that these rules mean that no one else shall be present at the taking of the testimony except the parties mentioned in the rules; that, if these rules do not fully cover the question, equity rule 90 (29 Sup. Ct. xxxvii) applies. The contention that upon a proper construction of equity rule 67 the examination is to be private is directly supported by the decision of Jessel, Master of the Rolls, in Re Western of Canada Oil, Lands & Works Company, L. R. 6 Chan. Div. p. 109:

"The place where the examiner sits is not a public court, but a mere office. That was so before the Judicature Acts, and those acts, so far as I know, have made no change in his position, and his office remains a private office to this day.

"The thirty-first section of the Act 15 & 16 Vict. c. 86, which is still in force for this purpose, provides that 'all witnesses to be examined by or before one of the examiners of the court, or by or before an examiner to be specially appointed by the court, * * * and such examination shall take place in the presence of the parties, their counsel, solicitors, or agents.' That must mean in the presence of the parties, their counsel, solicitors, or agents exclusively. It cannot mean that the parties, their counsel, solicitors, or agents must be present. It can only mean that the examination shall take place in their presence if they choose to attend. Subject to this, it is a private examination.

"In my opinion the public have no right whatever to go into the examiner's office, and the examiner has no discretion as to admitting them."

The language construed by the learned judge was substantially that of rule 67.

We may further notice that rule 13 of the Circuit Court contained the form of commission upon interrogatories at law or in equity. Among other things it is provided:

"You will not, without the consent of the parties in writing, permit any person except yourself to attend at the taking of any deposition, or to communicate with any witness, whilst giving his deposition, in relation to the subject-matter thereof, except that you may permit to be present such dis-

interested person (if any) as you may think fit to appoint as a clerk to assist you in reducing the deposition to writing, and you will take such deposition in a place separate and apart from all other persons."

Certainly this is inconsistent with the existence of any supposed rule that the public has a right to hear what is being said as distinguished from an opportunity to hear it read at the trial. In conclusion we may say: Is it not time enough for the public to know what the testimony is when the court knows what it is? Is it not enough for the public to receive testimony in the form in which the court must receive it?

The examiner will not, without the consent of both parties, allow the attendance of persons other than those mentioned in rule 67.

Judge PUTNAM sat at the hearing of this matter by this court assembled under the statute; but, as he had expressed an opinion when the question involved was brought before him as a single judge, he deemed it proper to withdraw from expressing any further opinion.