**LOFT, Inc., v. CORN PRODUCTS REFIN-
ING CO. et al.**

No. 6462.

Circuit Court of Appeals, Seventh Circuit.

March 14, 1939.

Joseph J. Daniels and William G. Davis, both of Indianapolis, Ind., Frank H. Hall, of New York City, Thomas D. Stevenson, of Indianapolis, Ind., Warren W. Cunningham, of New York City, Samuel D. Miller, of Indianapolis, Ind., D. D. Ingamells, of St. Louis, Mo., Howard S. Young, of Indianapolis, Ind., Abraham Lowenhaupt, of St. Louis, Mo., Paul Y. Davis, of Indianapolis, Ind., Thomas G. Flaherty, of New York City, Samuel Dowden, of Indianapolis, Ind., C. C. LeForgee, of Decatur, Ill., James W. Noel, of Indianapolis, Ind., and Frank N. Richman and Julian Sharpnack, both of Columbus, Ind., for appellants.

Everett Sanders and Edward F. Howrey, both of Washington, D. C., and Judson L. Stark, Frank C. Dailey, Perry E. O'Neal, George S. Dailey, and Robert A. Efroymson, all of Indianapolis, Ind., for plaintiff-appellee.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

TREANOR, Circuit Judge.

Plaintiff-appellee filed a bill of discovery in aid of its action at law to recover damages alleged to have been caused to the plaintiff by the defendants' violation of the Sherman Anti-Trust Act;[1] the action at law having been brought pursuant to the authorization of the Clayton Anti-Trust Act.[2] After the bill of discovery had been filed the District Court ordered certain amendments to be made to the complaint in the law action. The plaintiff thereupon filed an amended complaint but did not file an amended bill of discovery. No change in substance was caused by the amendment of the original complaint in the action at law, and the decree in the equity cause of discovery was based on the amended complaint.

The bill of discovery propounded 342 interrogatories of which the first 244 were addressed to all defendants except the "Foundation," the latter being requested to answer the remaining interrogatories. Many of the interrogatories were identical except that they covered different periods of time. Defendants' objections to answering many of the interrogatories were sustained but plaintiff assigns no cross-errors. This appeal is prosecuted from the order of the District Court requiring the defendants to answer the remaining interrogatories.

The appeal raises two questions: (1) the propriety of the interrogatories allowed, and (2) the jurisdiction of the District Court. As respects the first question defendants urge the impropriety of the interrogatories on the following grounds:

(1) All interrogatories directed to the conduct of defendants between the years 1920 and 1925 are irrelevant because the complaint proceeds upon a conspiracy and combination formed in 1925 and existing through 1935.

(2) The interrogatories seek a mass of detailed information respecting matters irrelevant to the issues raised by the complaint and general denial thereto.

[1] 26 Stat. 209, 15 U.S.C.A. §§ 1 and 2.

[2] 38 Stat. 731, 15 U.S.C.A. § 15.

(3) Answers to certain of the interrogatories will involve great accounting expense and plaintiff should pay such expense before obtaining the answers.

The first two grounds involve the same test, that of relevancy. It seems clear that if conduct during the period 1920 to 1925 has a substantial bearing on the issues, then such conduct is a proper field for investigation by a fact finding body and the material facts of such conduct properly may be the subject of interrogatories.

To appraise defendants' grounds of objection to the interrogatories it is necessary to have in mind the substance of the principal issues as revealed by the pleadings. The complaint in the law action was met with a general denial which put in issue all material allegations of the complaint. The amended complaint, as stated above, was filed after the District Court had ordered the original complaint to be amended by striking out allegations that in 1916 a decree in favor of the United States was entered finding the present defendants guilty of violation of the Sherman Anti-Trust Act,[3] and that in 1932 a similar decree was entered by consent of parties.

The amended complaint at law alleges that the defendants had organized the Corn Industries Research Foundation, Inc. under the laws of Indiana to act as a trade association; that defendant Corn Products Refining Company is the dominant member of the Foundation and dominates the glucose industry; that the defendants at various times since 1906 had monopolized the manufacture throughout the United States of glucose and other corn products; that plaintiff is a candy manufacturer and that glucose is required in the manufacture of candy to prevent crystalization and granulation, and for use as a cheap substitute for cane sugar. Plaintiff further alleged in its amended complaint that because of its dependence on the glucose industry, and because glucose was an adulterant, plaintiff had undertaken experiments whereby it developed a process in 1934 for the manufacture of candy in commercial and competitive quantities without the use of glucose; that defendants sought to suppress the use of plaintiff's process by the candy industry; and that, to accomplish this purpose, defendants induced newspapers to refuse advertisements thereof, deceiving said newspapers by purposely confusing glucose and dextrose and falsely attributing to glucose the same health qualities found in dextrose. Also it was alleged that the foregoing deception was practiced upon the public by the defendants and that defendants conspired and combined to restrain interstate trade and commerce in glucose candy and confection products and that defendants have combined and conspired to monopolize said commerce for the purpose and with the intent of:

"(a) suppressing competition in the manufacture and sale of glucose and other corn products in commerce as aforesaid;

"(b) securing a monopoly in the manufacture and sale of glucose and other corn products;

"(c) establishing and maintaining uniform, enhanced, oppressive, and noncompetitive prices, terms, conditions, concessions, and transportation charges in connection with the sale of glucose and other corn products;

"(d) enhancing the selling prices of glucose and other corn products to purchasers, including plaintiff;

"(e) eliminating concessions and special terms in the sale of glucose and other corn products to purchasers, including plaintiff;

"(f) retarding and preventing the lowering of said price to purchasers, including plaintiff;

"(g) limiting production of glucose and other corn products;

"(h) stifling competition so that large profits would be obtained and maintained;
* * *

"(k) stifling any activities which might have a tendency to decrease the profits of the members of the glucose industry;

"(l) injuring the business and property of others who sought to take themselves from under the dominance of and to release themselves from dependence upon said members of the glucose industry;
*  *  *  *  *  *

"(n) restraining and preventing plaintiff from obtaining the natural profits which would flow from a widespread use of said process by other manufacturers of candy and kindred products."

---

[3] United States v. Corn Products Refining Company, D.C., 234 F. 964.

In addition to the foregoing the complaint further alleges the mechanics of the plan whereby the above results were achieved. The complaint charges that the defendants adopted a "reporting plan" whereby they systematically interchanged intimate details of terms, concessions, transportation charges, etc.; that they allocated and limited the proportionate amount of corn ground by each member, and thus curtailed the aggregate production of glucose in other corn products; that defendants took reprisals against those who would not conform to the standards of prices, terms, production, etc., set by the combination and conspiracy; that virtually all price competition has been eliminated.

The above summarization of the amended complaint omits many material allegations but is sufficient to serve the needs of our discussion.

As already stated defendants strongly urge. the impropriety of interrogatories dealing with the period 1920 to 1925. Plaintiff contends that this was a period of competition and that the unlawful combination of defendants commenced in 1925. Consequently, plaintiff urges that information respecting the practices and conduct of defendants during a reasonable period prior to 1925 is relevant to the issues because its affords a standard of comparison for the practices and conduct of defendants for the period during which, it is alleged, they were guilty of unlawful practices and conduct.

■ A comparison of the periods will tend to reveal whether there was a change in the direction of monopolistic control and restriction of competition; and if such a change is revealed the comparison will throw light on the extent and character of the change. In view of the long period of time involved in the litigation and the magnitude of the activities under examination, we cannot say that the interrogatories cover an unreasonably long period of time prior to the alleged beginning of the wrongful activities of defendants. In general the interrogatories are directed to the existence or non-existence of facts, the existence or non-existence of which is relevant to the issues raised by the complaint and general denial.

■ The objections to the relevancy of other interrogatories are too numerous to permit minute examination of each. Cases dealing with interrogatories filed under statutes or with bills of discovery reveal, in general, a liberal test of relevancy. To meet the test of relevancy evidence sought to be elicited by interrogatories need not be complete, direct or decisive of issues. In passing upon relevancy the District Court is not required to anticipate the weight of the evidence sought. If it is competent and material to the issues, that is sufficient. It has been stated that the "extent of the inquiry is largely one of discretion for the District Court";[4] and the Supreme Court of the United States has stated that "it is all a matter of discretion."[5]

■ Defendants object to interrogatories numbered 57, 63, 64, 65, 66 and 67 (and 127, 128, 129, 130, 131 which are identical but cover the period from 1920 to 1925). These questions seek to determine the volume in pounds of total sales of glucose to candy manufacturers per year, the amount purchased by each purchaser per month, and the quoted price to such purchaser and the actual price paid, the name and address of the purchaser, the net delivered price by tank and by hundredweight of glucose to all other customers by months and what variations in price existed as to these customers. Apparently, such information will bear on the extent of defendants' control, domination and monopoly over the sale of glucose, which is one of the issues. It will bear on the question of uniformity of prices, non-competitive prices as between the different defendants, and unreasonable enhancement of selling price, all of which are material to the issues.

■ Defendants object to interrogatories numbered 75, 76, 77 (143–145 identical except for period), 157 and 170. These questions require defendants to state what rebates they have made on glucose, the information reported under the reporting plan respecting deductions made to customers, concessions made to customers, and the names of such customers. The complaint alleges that defendants acted in concert with regard to prices, and that the reporting plan was a means to accomplish

[4] Indianapolis Amusement Co. v. Metro-Goldwyn-Mayer Distributing Corp., 7 Cir., 90 F.2d 732, 735.

[5] Sinclair Refining Co. v. Jenkins Petroleum Process Co., 289 U.S. 689–697, 53 S.Ct. 736, 739, 77 L.Ed. 1449, 88 A.L.R. 496.

the unlawful conspiracy and combination. The information sought by the foregoing questions falls directly·and plainly within the allegation that prior to the conspiracy and combination defendants frequently allowed special concessions and terms and that net prices varied and that there was competition in the industry, but that all this terminated after the commencement of the conspiracy and combination. Defendants seek to make the relevancy of the anticipated evidence turn upon an assumption of what the answers ·will be. They suggest that if the answers show the absence of rebates and concessions then there would be no rebates to give. That would be true and defendants could so answer. But defendants further suggest that if they did make rebates and concessions then there would be details to give and the fact that there were rebates and concessions would disprove plaintiff's allegation of price uniformity. From the foregoing defendants conclude that the interrogatories show merely. an attempt to "burrow" into defendants' case. The District Court could not anticipate the answers and, moreover, it is conceivable that special rebates and concessions, if there were any, are consistent with concerted activity with regard to prices and they may be merely cloaks to disguise combinations and conspiracies. What the information will tend to prove remains an open question.

■ Another group of interrogatories asks defendants to state net profits on the sale of glucose and net profits on the sale of other corn products, to state the method by which cost of manufacture and distribution is determined, the manufacturing cost and total cost per pound of glucose sold. Defendants argue that in order to establish a conspiracy to fix prices it is not necessary to show that the prices fixed are unreasonable in relation to costs. This may be granted, but plaintiff has alleged the fact of unconscionable profits and it will undoubtedly base its alleged damages on such an allegation; and if the unconscionable profits are shown to have resulted from. an unlawful combination and conspiracy and have resulted in injury to the plaintiff, the information sought is not irrelevant. Plaintiff alleges that it suffered damage in the sum of $500,000 by reason of excessive prices which it was compelled to pay from December 1925 to August 1934 as a result of the conspiracy and combination.

■ Defendants object to certain interrogatories which seek disclosure of the states in which corn was purchased, the number of bushels purchased in each state, the number shipped yearly from each state to a defendant and the prices of glucose to customers by month as compared with the prices of corn for the same month. Defendants also object to certain other interrogatories which ask what proportion of the total annual grind of corn in the United States is ground by each defendant; what proportion of the total annual production of all glucose distributed in the United States was distributed by the defendants and what interest is held by defendants, if any, in the business of candy manufacturing. As to some of the matters defendants claim that they have no knowledge, and such an answer is sufficient unless as a matter of law they are required to have knowledge. The facts with reference to the purchase of corn and the states wherein it was purchased, the prices of glucose and the prices of corn for the same respective period, the proportions of all corn grown and all glucose distributed in the United States have a definite bearing upon many issues. They are material to the allegations respecting the magnitude of defendants' operations; their nation-wide scope and alleged monopoly. The complaint alleges corn was shipped from certain states to defendants' factories in certain states; that they charged freight rates and usèd the city of Chicago as a freight base point, although no factories were located in Chicago and only a part of the corn was purchased in or near Chicago; that defendants curtailed and allocated the amount of corn to be ground by each. The nation-wide purchases of corn plus the agreements with regard to the proportionate amounts to be ground by each defendant bear on the question of the alleged conspiracy and combination to control or restrict the interstate commerce in corn products. The prices of· glucose charged by defendants and ·the prices they paid for corn with corresponding or non-corresponding fluctuations are material to the disclosure of costs, profits, and control exerted by defendants. It is true that the probative value of showing what the prices of glucose are for a particular month and the price of corn for the same month may not be great in the absence of a showing that the corn purchased during a particular month is processed into glucose during

that month. This only amounts to saying that the answers to the interrogatories as framed will not bring out the complete picture from the standpoint of the defendants. But defendants are not precluded from producing evidence at the trial to complete the picture. The extent of the interest which may be held by any defendant in candy companies bears on the question of the control exerted by defendants over the glucose industry and sale of glucose. The pertinent interrogatories are not barred by the fact that plaintiff did not allege ·specifically that any defendant had such an interest since there is an issue to which the information is relevant.

Defendants object to interrogatories which seek disclosure by each defendant of the dates of long distance telephone calls held with other defendants; and defendants urge that it is startling that such calls may be evidence of a conspiracy since there might be any number of proper reasons for the calls. It may well be that all long distance telephone conversations were entirely unrelated to the alleged conspiracy and combination; but on the other hand it was perfectly obvious that under modern conditions of communication long distance telephone calls could be used as a most ·effective instrumentality in accomplishing the purposes of such a combination and conspiracy as is alleged in the complaint to have existed. The relations of the defendants are at issue and the fact of long distance calls between normally competitive corporations is sufficiently material to justify the interrogatories.

■ The last group to be considered consists of interrogatories 151–205 and 206–244. These interrogatories emphasize the date, April 6, 1932, by reason of the fact that they seek information about happenings before and after that date. The theory of the objection of defendants is that the plaintiff is enabled to get before the fact finding body the information that a consent decree was entered on such date against defendants. The District Court struck out of the original complaint the reference to the 1932 consent decree. The court's reasons do not appear of record and as. far as the record reveals to us the ruling merely is that such an allegation is not a proper part of the complaint. There is no ruling as yet that evidence would be inadmissible to show the consent decree.

Defendants contend that under 15 U.S.C. A. § 16 the consent decree is inadmissible, while plaintiff contends that the consent decree is admissible as a written admission although it may not have the effect of prima facie proof given by 15 U.S.C.A. § 16 to a contested decree. The interrogatories, however, make no mention of the consent decree. The date of the decree may in fact mark a line between competition and non-competition; and as stated above in reference to the years 1920–1925 what took place in a period of competition, when compared to what took place in a period of alleged non-competition, may be of great significance in determining whether non-competition did in fact exist in the latter period. Plaintiff's case does not stand or fall upon the showing that there was continuous non-competition throughout the period 1925–1934. Plaintiff may show that before 1932 there was a condition of non-competition, that for a succeeding period competition among the defendants existed, and that thereafter there was a return to the former condition of non-competition. The District Court has not held that such periods are not a proper field of inquiry, but on the contrary its ruling on the objection necessarily constitutes a holding that such periods constitute a proper time division for the purpose of inquiry by interrogatories. The admissibility of the consent decree remains open; and if the District Court holds it inadmissible that court will exclude from the fact finding body any improper references thereto whether such references are found in answers to interrogatories or in other offered evidence. We express no opinion on the question of the admissibility of the decree because that question is not necessarily involved in·the objection to the use of the date of April 6, 1932, since nowhere in any of the approved interrogatories is there any reference to the existence of any such decree.

■ The recent decisions of federal courts indicate a liberal attitude toward the use of bills of discovery in equity proceedings ancillary to suits at law. The reasons for this attitude are aptly stated by Judge Woolsey in Zolla v. Grand Rapids Store Equipment Corporation:[6]

"The rationale of this attitude is, of course, not only that the court wants to know the truth, but also that it is good for

---

[6] D.C., 46 F.2d 319, 320.

both the parties to learn the truth far enough ahead of the trial, not only to enable them to prepare for trial, but also to enable them to decide whether or not it may be futile to proceed to trial."

Judge Woolsey suggested that the legitimate function of discovery is to furnish evidence, and pointed out that it is not a good ground of objection to interrogatories that the plaintiff is merely attempting to obtain evidence. In Sinclair Refining Co. v. Jenkins Petroleum Process Co., supra, the Supreme Court stated that problems of discovery are not to be solved by "restrictive formulas" and added the following observation:

"Procedure must have the capacity of flexible adjustment to changing groups of facts. The law of discovery has been invested at times with unnecessary mystery. There are few fields where considerations of practical convenience should play a larger rôle. The rationale of the remedy, when used as an auxiliary process in aid of trials at law, is simplicity itself. At times, cases will not be proved, or will be proved clumsily or wastefully, if the litigant is not permitted to gather his evidence in advance. When this necessity is made out with reasonable certainty, a bill in equity is maintainable to give him what he needs. * * * Today the remedy survives, chiefly, if not wholly, to give facility to proof. In the practice of many states there is a summary substitute by an order for examination before trial or for the inspection of books and papers. The substitute has never found its way into the procedure of the federal courts. * * * The remedy in those courts is still by bill in equity as in days before the codes. * * *"

As a further objection to answering certain interrogatories defendants urge that they will be compelled to incur a great burden and expense and contend that they should not be required to furnish answers to questions "unless plaintiff pays the cost of preparing them." This objection is directed especially to the disclosure of prices charged, volume of sales, special terms and concessions, yearly net profits, the prices of corn per month as compared with the price of glucose per month, etc. Various defendants filed affidavits of their officers and employees for the purpose of showing that the furnishing of the required information would require examination of all their invoices throughout the periods covered by the interrogatories.

The objection on the ground of great expense was accompanied by the demand that plaintiff pay the original huge expense regardless of the ultimate conclusion of the law case; the demand was not that the expense abide the event of the lawsuit. Further, there was no offer to allow plaintiff such an inspection before trial as would enable plaintiff to undertake the allegedly huge task of compilation. Defendants, both in argument and brief, stated that there was no authority for requiring the payment of expense by the interrogator as a condition to obtaining answers, and they assume that the point is one of first impression in this country. They urge the general proposition that equitable relief should be moulded so as to do equity and rely upon certain English authorities. English texts and decisions go further than any authorities in this country in recognizing liability of the interrogator for expenses incident to discovery; but we find no authority which would support defendants' position in the instant case. The following excerpt indicates the wide discretion of English courts in the matter of allocating costs incident to discovery:

" * * * the costs of and incident to * * * discovery * * * are in the discretion of the court * * * The costs of interrogatories and answers thereto are usually treated * * * as part of the costs in the cause which follow the event * * * The court may, however, * * * inquire into the propriety of exhibiting the interrogatories and if * * * such have been exhibited unreasonably, vexatiously or at improper length, the costs occasioned by the interrogatories and answers thereto are to be borne by the party at fault."[7]

This Court cannot say that the interrogatories were exhibited unreasonably, vexatiously or at improper length. The mere fact that they are many and complex does not establish this. The tremendous scope of defendants' operations necessarily requires many and complex questions to disclose the information to which plaintiff is entitled.

The federal act authorizing investigation of books and papers has been limited to an inspection at or during the

---

[7] Piele "The Law and Practice of Discovery", p. 182 (1883).

trial only, not before.[8] As stated in Sinclair Refining Co. v. Jenkins Petroleum Process Co., supra, "In * * * many states there is a summary substitute [for bills of discovery] by an order for examination before trial or for the inspection of books and papers"; but this substitute has not found its way into the procedure of the federal courts. And as stated in the opinion in the foregoing case, the remedy in the federal courts is still by bill in equity as in days before the codes. We have no reason to doubt that the District Court would have sustained objections to many of plaintiff's interrogatories, or at least have required substantial modification of the same, if defendants had offered an inspection of books before trial with sufficient opportunity to plaintiff to obtain the information sought by the interrogatories. One well recognized limitation on the use of interrogatories is that they may not be used to obtain information "which is or should be known as well by the party who propounds the interrogatories as by the party to whom they are propounded."[9] An interrogated party is not required to assume any greater burden of effort or expense than is necessary to make information available to the interrogator. Even under the English authorities defendants in the instant case would be required to offer an inspection in order to take the benefit of an objection based on the expense of answering.[10]

We cannot disregard the merit of plaintiff's suggestion that if a gigantic combination may shift expense of answering interrogatories to a single company which seeks to obtain redress by exposure of the illegal combination, then the illegal combination has the power of defeating any action and any liability simply because through its own illegal acts the combination has become so large that an injured party cannot obtain access to legal proof of the illegality of the combination. ▪▪▪ We are of the opinion that when information sought by proper interrogatories is obtainable only from the private books and records of the interrogated party, costs or burden of preparing answers is not sufficient to sustain an objection to furnishing answers. And it does not change the merits of the situation for the objector to refuse to answer unless the interrogator bears the expense. No doubt in many cases an interrogated party can relieve itself of burden and expense by placing at the disposal of the interrogator the means of acquiring the information sought and thus assisting the trial court to mould the equitable relief "so as to do equity."

Staley Sales Corporation, one of the defendants, has filed a separate brief on a ground peculiar to itself. The original complaint in the law action named A. E. Staley Manufacturing Company and Staley Sales Corporation as defendants. The amended complaint omitted Staley Mfg. Company from the list of defendants. The bill of discovery which was filed before the filing of the amended complaint prayed that defendants Staley Sales Corporation and A. E. Staley Mfg. Company answer certain interrogatories. Staley Sales Corporation is included in the list of defendants named in the amended complaint and the order of the District Court in the bill of discovery proceeding was that Staley Sales Corporation answer the interrogatories.

The substance of Staley's contention is that under the pleadings the bill of discovery was not ancillary to the amended complaint and that Staley is under no duty to accept the interrogatories for the reason that the amended complaint fails to bring it within the conspiracy.

▪▪▪ It is not questioned that the bill of discovery was ancillary to the original complaint and the amended complaint took the place of the original one. It did not introduce a new cause of action and relates back to the time of the filing of the original pleading. The bill of discovery, though filed before the filing of the amended complaint, must be treated as ancillary to the amended complaint. And the decree below refers to the amended complaint and is based thereon.

▪▪▪ The amended complaint sufficiently alleges that Staley Sales Corporation was a member of the conspiracy. It is recited in the complaint that the action is brought "against the following corporations who are active members of the Corn Research Foundation," and Staley Sales

---

[8] Carpenter v. Winn, 221 U.S. 533, 31 S.Ct. 683, 55 L.Ed. 842.

[9] Zolla v. Grand Rapids Store Equipment Corp. supra.

[10] White v. Williams, 32 Eng. Reprint 327, 8 Ves.Jr. 193; Christian v. Taylor, 59 Eng. Reprint 928, 11 Sim. 401.

Corporation is included in the list. It is alleged that the Foundation had been formed "by defendants and certain other members of the glucose industries"; and it is further alleged that "the defendants and said other members of the glucose industry who are represented in and by said Foundation, either directly or through a parent corporation, will be referred to as members of the glucose industry." The term "defendants" in the foregoing recitals clearly includes Staley Sales Corporation and designates Staley Sales Corporation as a defendant member of the glucose industry. Necessarily Staley Sales Corporation is included in the term "defendants" in paragraph 6 in which it is alleged, among other things, that "defendants and said other members of the glucose industry * * * have been and now are engaged in a combination and conspiracy, * . * * ."

■■■ Staley states that the questions "were evidently intended for the A. E. Staley Mfg. Company." That is true. Because of the close relationship existing between A. E. Staley Mfg. Company and Staley Sales Corporation, and since the bill of discovery was filed before plaintiff had dismissed the law action as to the Staley Mfg. Company, some of the interrogatories were directed appropriately to both companies. The Staley Mfg. Company is no longer a party to either the law action or the bill of discovery, but that does not relieve Staley Sales Corporation of its obligation to answer interrogatories which are addressed to it, whether addressed to it separately, or to both organizations. Obviously, Staley Sales Corporation is under no obligation to answer questions calling for facts which are exclusively within the knowledge of Staley Mfg. Company.

Ten of the defendants appeared specially and moved to dismiss plaintiff's bill of discovery on the ground that it appeared affirmatively on the face of the bill that it was not brought in the district of residence of either the plaintiff or of any of the moving defendants, as required by Section 51 of the Judicial Code, as amended.[11] This motion was overruled and such ruling is claimed to have been erroneous.

Plaintiff contends that jurisdiction of the bill for discovery follows jurisdiction of the action at law in aid of which it is brought, and that since the District Court had jurisdiction in the law action it had jurisdiction of the bill which was ancillary thereto. This precise contention was upheld in Baush Machine Tool Co. v. Aluminum Co. of America.[12] In support of its ruling in that case the court made the following statement:

"* * * we need not decide that section 12 of the Clayton Act [15 U.S.C.A. § 22] offers jurisdiction for the bill of discovery independent of the action at law. It is sufficient for the purpose of this appeal to say that the bill is ancillary or auxiliary to the action at law and is thus supported by the undisputed jurisdiction of the action at law. If the bill is ancillary, the question of independent jurisdiction under section 12 of the Clayton Act is not important. * * * The bill of discovery is ancillary to the law action. Its very purpose is that of aiding the action at law."

■■■ In Eichel v. United States Fidelity & Guaranty Co.[13] an action was begun in the District Court which had jurisdiction because the action arose under a law of the United States. The defendant therein filed a bill in equity in the same court setting up certain partial equitable defenses not admissible at law. The bill disclosed that the parties were citizens of different states but the court was asked to entertain it as a dependent and ancillary bill in virtue of the jurisdiction already acquired. The Supreme Court stated that "plainly the bill was dependent and ancillary and the jurisdiction to entertain it was referable to that invoked and existing in the actions at law out of which it arose." And it seems equally clear that the bill of discovery in the instant case has no independent existence but is dependent and ancillary to the law action and consequently that the jurisdiction to entertain it is referable to the jurisdiction in the law action. The general rule on this point has been well expressed as follows: "Principal jurisdiction involves and carries along with itself power over matters that can properly be regarded as accessorial. * * * As to such ancillary

[11] 28 U.S.C.A. § 112.

[12] 2 Cir., 63 F.2d 778, 779, certiorari denied 289 U.S. 739, 53 S.Ct. 658, 77 L. Ed. 1486.

[13] 245 U.S. 102, 38 S.Ct. 47, 48, 62 L. Ed. 177.

proceeding, accordingly, the amount of money concerned, the citizenship of the parties therein, * * * are quite immaterial. And by virtue of this principle the District Court has jurisdiction of many matters as ancillary over which there would be no jurisdiction, were these matters independent and standing alone."[14]

We are in accord with the reasoning and holding of the Circuit Court of Appeals for the Second Circuit in Baush Machine Tool Co. v. Aluminum Co., supra, and hold that the District Court did not err in overruling the motion to dismiss.

Since we conclude that the District Court did not err either in overruling the motions to dismiss or in overruling objections to the interrogatories, the decree of the District Court is affirmed.

[14] Dobie on Federal Procedure, p. 323.