UNITED STATES v. SMART et al. (two cases).

(Circuit Court of Appeals, Eighth Circuit. October 30, 1916.)

Nos. 4595, 4596.

1. BAIL ⟨©⟩79(2)—RELIEF FROM FORFEITURE—PLEADING.

A petition for the remission of the penalty of a forfeited recognizance, under Rev. St. § 1020 (Comp. St. 1913, § 1684), which authorizes such remission in the discretion of the court whenever it appears to the court that "there has been no willful default of the party" and that a trial can notwithstanding be had in the cause, is properly signed by a person who put up the money to indemnify the sureties, and who is the real party in interest, and an allegation therein that there was no willful default of the defendant is sufficient; it being neither necessary nor proper to plead the evidence.

[Ed. Note.—For other cases, see Bail, Cent. Dig. §§ 363–365, 369; Dec. Dig. ⟨©⟩79(2).]

2. BAIL ⟨©⟩79(2)—RELIEF FROM FORFEITURE—DISCRETION OF COURT.

Such an application being addressed to the discretion of the District Court, its decision that there was no willful default·by defendant cannot be reversed, if supported by substantial evidence, although there is also evidence to the contrary.

[Ed. Note.—For other cases, see Bail, Cent. Dig. §§ 363–365, 369; Dec. Dig. ⟨©⟩79(2).]

3. DEPOSITS IN COURT ⟨©⟩4—"RECEIVED IN A PENDING CAUSE"—"MONEY ACCRUING TO THE UNITED STATES"—FORFEITURES.

Rev. St. §§ 995, 996 (Comp. St. 1913, §§ 1644, 1645), provide that all moneys paid into any court or received by the officers thereof in any cause pending in such court shall be deposited with the treasurer or a designated depositary of the United States to the credit of such court, and withdrawn only on orders of the judge. By regulation of the Treasury Department public moneys, including moneys accruing to the United States from the forfeiture, shall be deposited to the credit of the treasurer. After the entry of an order adjudging default on a criminal recognizance and directing the issuance of a scire facias, but before any hearing thereon, one of the sureties remitted the amount named in the recognizance, but without interest or costs, to the clerk, who credited the same to him and deposited the money to the credit of the court. *Held*, that the money did not "accrue to the United States," so as to become its absolute property, prior to final judgment of forfeiture on return of the scire facias, but until that time was money received by the clerk in a pending cause within section 995, and was properly deposited by him, and subject to withdrawal on order of the judge.

[Ed. Note.—For other cases, see Deposits in Court, Cent. Dig. §§ 5, 6; Dec. Dig. ⟨©⟩4.]

In Error to and Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Criminal prosecution by the United States against Thomas R. Smart and others. From an order vacating an order adjudging forfeiture of a recognizance, the United States brings error and appeals. Affirmed.

Otto Bock, Asst. U. S. Atty., of Denver, Colo. (Harry B. Tedrow, U. S. Atty., of Denver, Colo., on the brief), for the United States.

John A. Deweese, of Denver, Colo. (Edgar Caypless, of Denver, Colo., on the brief), for defendants in error and appellees.

⟨©⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before SANBORN, Circuit Judge, and TRIEBER and VAN VALKENBURGH, District Judges.

SANBORN, Circuit Judge. The United States challenges by appeal and writ of error an order of the court below, made on September 6, 1915, vacating its order of November 19, 1914, which adjudged the forfeiture of the recognizance of the defendant Thomas R. Smart and his sureties, and directing that, out of the $1,500 which the sureties had caused to be paid to the clerk of the court in the case, $403.60, the cost of the apprehension and return of the defendant to the jurisdiction of the court, should be paid to the United States, that $18.20 should be paid to the clerk of the court on account of the defendant's costs in the case, and that the remainder should be paid to Tena Smart, who owned and furnished to the sureties the $1,500 which they paid to the clerk. The order assailed was made under section 1020 of the Revised Statutes upon a petition for the relief granted by the court, made by Thomas Smart, Tena Smart, his wife, and others, the answer of the United States, and affidavits and other evidence. Section 1020 provides that:

"When any recognizance in a criminal cause, taken for, or in, or returnable to, any court of the United States, is forfeited by a breach of the condition thereof, such court may, in its discretion, remit the whole or a part of the penalty, whenever it appears to the court that there has been no willful default of the party, and that a trial can, notwithstanding, be had in the cause, and that public justice does not otherwise require the same penalty to be enforced."

[1] The first reason urged by counsel for the United States for a reversal of the order is that the allegation of the petition "that there has been no willful default of Thomas R. Smart, and that there was no willful default of Thomas R. Smart or his sureties," was an insufficient averment of that fact, and that allegations of the evidence that this default was not willful were indispensable to warrant proof and a finding of Smart's purpose and intention. But the averment was of the intent and purpose of Smart. His acts and words before and at the time of that default were evidence of that intention and purpose, but it was not necessary or desirable that the petition should plead this evidence. The clear statement of the essential fact is a sufficient and better pleading of it than a rambling statement of acts and statements that indicated the intent and purpose of the defendant. Another objection to the petition is that it was verified by Tena Smart and that she was not a proper party to it. But she was the real party in interest in the application. The fact was alleged in the petition that the $1,500 which induced the sureties to sign the recognizance of Smart was her money, which she caused to be delivered to them to indemnify them for their undertaking, and that it was on account of this money that they caused the $1,500 to be paid to the clerk of the court after the recognizance was adjudged forfeited. Tena Smart under these circumstances was a proper party to the petition, and its averments were sufficient to warrant a remission of the penalty of the recognizance.

[2] The second reason urged by counsel for a reversal of the order is that the court below abused its discretion in remitting the penalty

and vacating the forfeiture, because the uncontradicted evidence adduced at the hearing was that the default on the part of the defendant Smart was willful. It is unnecessary, in the discussion and determination of this contention, to recite all the evidence for the United States, for the Congress intrusted to the discretion of the District Court, and not to the discretion of this court, the decision of the question whether or not Smart was guilty of a willful default and whether or not the penalty of his recognizance should be remitted, and if there was substantial evidence before that court that his default was not willful, there was no abuse of its discretion in so finding, although there is also evidence to the contrary. There was evidence before the court of these facts: On August 7, 1914, Smart and his sureties made their recognizance under a penalty of $1,500, conditioned that he should appear before the court at Denver on the first day of that or any future term of the court when required, and that he should answer to the criminal charge against him specified in the recognizance. Tena Smart caused $1,500 of her money to be placed under the control of the sureties on this recognizance to indemnify them for signing it at about the time they did so. On August 31, 1914, Smart wrote to the clerk of the court at Denver that he was completely in the dark as to the time when he was required to appear, requesting him to inform him and his bondsmen of the time and to send his mail to him in the care of Herbert Anderson at the Brooks Hotel, Idaho Falls, Idaho. On September 3, 1914, the United States attorney, in response to that letter, wrote Smart that the date when he was to appear was not determined, and asked him to communicate with him about October 1, 1914, and receive more definite information. On October 29, 1914, the United States attorney wrote Smart and his bondsman Anderson that his case was set for trial on November 19, 1914. No answer was received by the United States attorney from Smart. On November 6, 1914, the attorney telegraphed Anderson: "Have not heard from Smart as I should have. Is his bond to be forfeited?" And Anderson telegraphed that he had not heard from Smart for some time and that in case they had to forfeit the bond the money was ready. On November 19, 1914, Smart did not appear, and an order was made which recited that the district attorney moved for a forfeiture of the recognizance, that Smart and his bondsmen were called, but came not and made default, and closed with these words:

"Wherefore it is considered by the court that the said Thomas H. Smart, Charles H. Anderson, and Robert Irwin have each of them broken the conditions of their said recognizance, and that the same be taken as forfeited, and that a scire facias issue in that behalf, returnable on the first day of the next term of this court sitting at Denver."

Thereupon the United States attorney wrote to the bondsmen that the recognizance was forfeited by the court, and called upon them to send the amount of the bond to the clerk of the court. On December 23, 1914, the clerk of the court received a draft of the State Bank of Idaho Falls, Idaho, payable to him for $1,500, which he placed to the credit of the surety Anderson on his docket cash account, and held subject to the order of the court until September 6, 1915, when the court below vacated the forfeiture of the recognizance and directed the payment of

$403.60 of this $1,500 to the United States, $18.20 to the clerk for the costs of the defendant, and the remainder to Tena Smart. Meanwhile in April and May, 1915, Smart had been apprehended in the state of Washington, ordered by the District Court of the District of Washington to be removed to Denver, had been brought to the court below, had been tried for the offenses charged against him before the same judge who granted the petition to vacate the forfeiture of his recognizance, had been found guilty, and on July 21, 1915, had been sentenced. At his trial and at the time of his sentence Smart stated to the court that he was advised by the United States attorney when he gave his recognizance that the attorney would let him know when his presence was needed, that the defendant was not a resident of the district of Colorado, that he received a letter from the attorney not to appear at a term of court at which he expected his trial, that he did not appear at that term, that he went to old Mexico and on account of the revolution could not return when he desired, that he came back as soon as he was able, that he did not receive any further communication from the attorney advising him when he must appear for trial, and that it was at no time his intention to willfully absent himself from court when his case was set for trial.

The bill of exceptions in this case recites that, in passing upon the application to set aside the forfeiture and remit the penalty thereof, the court below considered and gave weight to these statements of the defendant Smart, and no objection or exception to that action appears in the record. There is much evidence in the bill of exceptions regarding the course of the defendant Smart subsequent to November 19, 1914, and concerning the endeavors to apprehend and expenses of apprehending and securing him, and there is the affidavit of one of the post office inspectors that in May, 1915, after Smart had been brought back to Denver, he told that inspector that he started back to Denver, and was there at the time the trial was set, but "that he lost his nerve and beat it," and that since then he had been in numerous places under the assumed name of Thomas Grant. But the default occurred on November 19, 1914, and the question was whether or not he then intended to make default. What he did afterwards, what intention he had subsequently, especially after his wife's money, or the proceeds of it, in December, 1914, had been received by the clerk, are much less persuasive of his intention when the default was made than what he did and said before and at that time. He was a nonresident of Colorado. He said that the United States attorney told him when he made his recognizance that the attorney would inform him when he was required to appear. His departure from Colorado, therefore, indicated no intention to flee, and his letter of August 31, 1914, to the clerk, giving his address and requesting him to give him and his bondsmen notice at that address of the time of his trial, and his statement at his trial and sentence that he did not intend to make default, constitute substantial and persuasive evidence that he did not, on or before November 19, 1914, intend to fail to appear at his trial, or to make a default of his recognizance. Here was substantial evidence that Smart was not guilty of a willful default, and the court was not guilty of an abuse of discretion in so finding.

[3] The third reason which counsel give for the reversal of the order challenged is that the $1,500 received by the clerk of the court in December, 1914, became, upon its receipt by him, the absolute property of the United States, and that the court below had no jurisdiction or authority to order it, or any part of it, paid to Tena Smart, who had furnished it. Section 995 of the Revised Statutes, provides that:

"All moneys paid into any court of the United States, or received by the officers thereof, in any cause pending or adjudicated in such court, shall be forthwith deposited with the treasurer, an assistant treasurer, or a designated depositary of the United States, in the name and to the credit of such court."

Section 996 provides that:

"No money deposited as aforesaid shall be withdrawn except by order of the judge or judges of said court, respectively, in term or in vacation, to be signed by such judge or judges, and to be entered and certified of record by the clerk; and every such order shall state the cause in or on account of which it is drawn."

There were regulations of the Treasury Department (Department Circular No. 47, April 5, 1905) to the effect that:

"Receivers of public moneys living in the same city or town with * * * a national bank depositary must deposit their receipts at the close of each day," that "all collections must be deposited to the credit of the treasurer of the United States," and that "clerks of the United States courts who receive public moneys accruing to the United States from * * * forfeitures of recognizances, * * * will deposit the same in accordance with the foregoing paragraphs."

Section 1020 of the Revised Statutes, as we have seen, empowers any court of the United States in which any recognizance in a criminal cause has been taken and forfeited by a breach of its condition, without limit as to time, to remit the whole or a part of the penalty in its discretion, when it appears to it that there has been no willful default of the party, that a trial can, notwithstanding, be had in the cause, and that public justice does not otherwise require the enforcement of the penalty. It is settled by the weight of reason and of authority that this power may be exercised and the penalty may be remitted after final judgment against the sureties on scire facias, and after the expiration of the term in which the default was adjudged, and after the expiration of the term in which the final judgment on scire facias was rendered. United States v. Jenkins, 176 Fed. 672, 100 C. C. A. 224, 20 Ann. Cas. 1255; United States v. Duncan, Fed. Cas. No. 15,004; United States v. Traynor (D. C.) 173 Fed. 114, 115. There can be no doubt, therefore, that unless the $1,500 received by the clerk of the court on December 23, 1914, and in the actual control of the clerk and the court on September 7, 1915, had become the absolute property of the United States, and had legally passed beyond the jurisdiction and control of the court before the latter date, that court had the authority and the right to remit it to the party on whom the penalty really fell, to Tena Smart, who furnished the money from which the deposit made with the clerk of the court in the pending cause on December 23, 1914, was derived.

The contention that the deposit was without the control of the

court rests on the proposition that this $1,500 became the absolute property of the United States the moment it was received by the clerk, that it was his duty to deposit it on that day in a national depositary to the credit of the treasurer of the United States, that he wrongfully failed to do this, and that the court erred because it was without right or power to take advantage of this dereliction of duty of the clerk to remit the money to the party equitably entitled to it, although it still remained under the actual control of the court. Thus it appears that the indispensable basis of the theory of counsel for the United States is the dereliction of the clerk in the discharge of his duty to decide, when he received this money, that it was the absolute property of the United States and to deposit it forthwith as such to the credit of the treasurer of the United States, instead of depositing it in the national depositary in the pending cause to the credit of the court.

The regular course of proceeding, when a defendant in a criminal case with his sureties has made a recognizance to appear at his trial and has failed to do so, is for the court on motion of the United States attorney to make an order that the defendant and the sureties have broken the conditions of their recognizance, that the same is forfeited, and that a scire facias issue to the defendant and his sureties, returnable at a time certain, to show cause why final judgment thereon should not be rendered and an execution be issued against them; the scire facias is then issued and served on the defendant and his sureties, and in answer to it they may defend by presenting such matters of legal avoidance as may be shown by plea, by questioning the amount of the judgment to be rendered, and by presenting such matters of relief as may tend to induce the court to remit or mitigate the forfeiture. On the hearing upon the return of the scire facias such matters are heard, the amount of the debt is then first liquidated and fixed, and if the defenses do not prevail, then for the first time a final judgment fixing the amount of the liability is rendered and the issue of an execution is ordered. United States v. Duncan, 25 Fed. Cas. 937, No. 15,004; United States v. Feely, 25 Fed. Cas. 1055, 1057, No. 15,082; United States v. Santos, 27 Fed. Cas. 954, No. 16,222; United States v. Winstead (D. C.) 12 Fed. 50, 51; United States v. Von Jenny, 39 Appeal Cases, District of Columbia, 377, 378; United States v. Traynor (D. C.) 173 Fed. 114, 115. In some of the courts of the United States the practice is, instead of issuing the scire facias, to bring an independent action against the defendant and his sureties on the forfeited recognizance; but not until scire facias or summons has been served on the sureties and they have had opportunity to plead in answer may final judgment fixing the amount of their liability and directing the execution be rendered. The judgment of default of the recognizance is an interlocutory judgment in a pending cause, which, in the absence of the defendant and the sureties may go to final judgment only after notice to the defendant and the sureties and an opportunity for them to be heard. The judgment of default of the recognizance is conditioned by the subsequent failure of the sureties after such notice

to present legal grounds for its avoidance, and by the subsequent determination of the amount of the recovery after such notice. So it is that, when the $1,500 was received by the clerk, there was a cause pending in his court between the United States, on the one hand, and Smart and his sureties, Anderson and Irwin, on the other hand, upon their recognizance. A judgment of default of the recognizance and of the issue of a scire facias returnable on the first day of the next term of the court had been rendered, and there the pending cause stood.

Sections 995 and 996 of the Revised Statutes provided that moneys paid into any court or received by the officers thereof in any cause pending in such court should be deposited with the treasurer or a designated depositary of the United States in the name and to the credit of such court, and that such moneys might be withdrawn and paid out on orders of the judge of that court, signed by him and entered and certified by the clerk. As the $1,500 was received by the clerk in a pending cause, credited to Anderson, one of the parties to that cause, on the clerk's docket cash account, and subsequently paid out on the orders of the judge, the legal presumption is that the clerk deposited it on the day he received it in a designated depositary to the credit of the court under sections 995 and 996. If that money was received by the clerk without any direction to apply it to the payment of a part of the liability of the sureties on the recognizance, for their liability on the day of its receipt was $1,500 and interest from November 19, 1914, or $1,512.46 and costs, if he received it with instructions to apply it to the payment of their liability on condition that the United States would accept it in compromise and settlement of that liability, and would satisfy and discharge on the record of the court the judgment of default of their recognizance against them, if he received it with instructions to hold it to the credit of Anderson until the judgment was satisfied or until an application to avoid the forfeiture could be heard by the court, and in many other conceivable circumstances, that money could not and did not become the absolute property of the United States upon its receipt, and it was not his duty to deposit it to the credit of the treasurer of the United States, but it was his duty to place and hold it in a designated depositary subject to the disposition of the court in the pending cause. As he so placed and held it, the legal presumption is that he did so for some such justifying reason.

As counsel for the United States insist that the $1,500 became the absolute property of the state on its receipt by the clerk, that he knew this, and that he violated his duty in failing to deposit it as such to the credit of the treasurer, and as they further insist that the court below was in error in treating it as deposited in a pending cause under section 995, and as this theory flies in the face of the legal presumption, the burden was upon them to establish the fact by the record that this $1,500 did become such absolute property of the United States, and that the clerk violated his duty in depositing it in the pending cause to the credit of the court under section 995. The following is all the record material to this issue: The petitioners

alleged that Anderson and Irwin, the sureties, remitted to the clerk of the court the said $1,500, and that the same is in the registry of the court, subject to the proper order or further disposition of this court. The answer of the United States was that said sum of $1,500 is now in the hands of the District Court of the United States as a full payment of the obligations created by said bail bond. There was no averment or claim in the answer, or during the trial, so far as the record discloses, that the money had been misappropriated, or that it was not rightfully within the jurisdiction of the court. The clerk was not called or sworn as a witness, and the only facts proved relevant to the issue under consideration were that the State Bank of Idaho Falls in December, 1914, sent to the clerk of the District Court a draft for $1,500, that the clerk indorsed the draft, and on December 23, 1915, credited the surety Anderson with $1,500 on his docket cash account, and that on August 30, 1915, eight months thereafter, Anderson and Irwin made affidavits that the $1,500 was paid to the clerk of the court in full payment of the debt created by the forfeiture. But this proof falls far short of overcoming the legal presumption that the clerk and the court below properly treated this fund, far short of proving violation of duty by the former, or lack of jurisdiction over the fund by the latter. There is no proof in this record that the clerk was directed by the bank that drew the draft, or by the surety or sureties, or by any other party to pay this money over to the United States on their recognizance; no proof what instructions, if any, were given him by the sender or senders of the draft. The money received was insufficient to pay the debt evidenced by the recognizance, and even if the sureties had instructed the clerk at the time he received it that it was sent as a full payment thereof (and there is no proof that they did), he could not lawfully have paid or delivered it to the United States until the United States, by its attorney or some other authorized agent, had agreed to accept it in compromise and settlement of the larger amount owing on the recognizance and to satisfy the judgment of default. The record fails to show that the $1,500 received by the clerk ever became the absolute property of the United States, that the clerk of the court failed properly to deposit the $1,500 he received, that this $1,500 and its disposition were not lawfully within the jurisdiction and control of the court below or that that court did not lawfully dispose of it in the exercise of a wise and just discretion, and the order of September 6, 1915, must be affirmed.

It is so ordered.