## SKOLNIK v. UNITED STATES.

(Circuit Court of Appeals. Seventh Circuit. December 18, 1924. Rehearing Denied March 17, 1925.)

No. 3424.

1. **Bail ⊜▷75—Failure of defendant to appear in trial court after affirmance constitutes default on supersedeas bond.**

Under a supersedeas bond given in the appellate court in a criminal case, conditional that defendant shall surrender himself in execution of the judgment and sentence, if affirmed, his failure to appear in the trial court after affirmance and mandate constitutes a default, and warrants a forfeiture of the bond.

2. **Bail ⊜▷79(1)—Court has no discretion to remit forfeiture where defendant has made willful default.**

Under Rev. St. § 1020 (Comp. St. § 1684), authorizing the court in its discretion to remit all or any part of the penalty in a bail bond after forfeiture, when there has been "no willful default of the party," the party meant is the defendant, and not the surety, and where his default has been willful the court is without discretion to remit.

3. **Bail ⊜▷79(1)—Remission of penalty in forfeited bond; construction of statute.**

The provision of Rev. St. § 1020 (Comp. St. § 1684), authorizing remission of the penalty in a bail bond after forfeiture, whenever it appears that the default of the party was not willful, "and that a trial can, notwithstanding, be had in the cause," does not limit the section to cases where there is to be a trial before a jury, but it applies to all cases where the case against the defendant can be proceeded with in any court.

4. **Bail ⊜▷79(1)—Exoneration from penalty in bail bond in Illinois courts is governed by statute, and not by the common law.**

The Illinois practice in relation to remission of the penalty in a bail bond in criminal cases is not governed by the common law, but by statute.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Scire facias by the United States against Sarah A. Skolnik for judgment on supersedeas bond. From a judgment against defendant, she brings error. Affirmed.

Jacob G. Grossberg, of Chicago, Ill., for plaintiff in error.

John Elliott Byrne, Sp. Asst. U. S. Atty., of Chicago, Ill.

Before ALSCHULER and PAGE, Circuit Judges, and CLIFFE, District Judge.

PAGE, Circuit Judge. Plaintiff in error seeks a reversal of the judgment of the District Court against her on a supersedeas bond given in this court, the condition of which is as follows:

"Now, the condition of said obligation is such that, if the said Edward J. Ader shall appear in person in the United States Circuit Court of Appeals for the Seventh Circuit on the 5th day of October A. D. 1921, of the October term, 19—, and from day to day thereafter in said court until said cause shall be finally disposed of, and shall abide by and obey the judgment and all orders made by the United States Circuit Court of Appeals for the Seventh Circuit in said cause, and shall surrender himself in execution of the judgment and sentence appealed from as said court may direct, if the judgment and sentence against him shall be affirmed or the writ of error is dismissed, and if he shall appear for trial in the District Court of the United States for the Northern District of Illinois, Eastern Division, on such day or days as may be appointed for retrial by said District Court and abide by and obey all orders of said court, provided the judgment and sentence against him shall be reversed by the United States Circuit Court of Appeals for the Seventh Circuit, then the above obligation to be void; otherwise, to remain in full force, virtue, and effect."

The case wherein the bond was given was affirmed by this court on October 14, 1922. The mandate issued out of this court on February 5, 1923, and was filed in the District Court on the same day. On March 1st, Ader not appearing, the District Court entered an order of default and forfeiture. Scire facias was issued March 7, 1923, returnable April 2, 1923. To the scire facias, defendants pleaded that, "subsequent to the time of the said default in the said scire facias mentioned and prior to this day, to wit, on the 21st day of March, 1923, the said Edward

J. Ader did come into the court and did surrender himself in execution of the judgment and sentence in said scire facias mentioned."

Defendants abided by their plea after demurrer was sustained. The mandate to the District Court was: "You are therefore hereby commanded that such further proceedings be had in said cause as according to right and justice and the laws of the United States ought to be had, the said writ of error notwithstanding."

Two objections are made to the judgment: (a) That Ader was not obligated, under the condition of the bond, to obey any order of the District Court, but only the orders of this court, and that he was not in default in respect thereto; (b) that, where there is a surrender before entry of judgment upon the scire facias, such judgment is invalid.

[1] 1. Upon affirmance of the judgment, this court sent the whole matter back to the District Court for execution of the judgment. One of the conditions of the bond is that Ader surrender himself in execution of the judgment and sentence appealed from, as this court might direct. Plainly, the execution of the judgment and sentence was directed by this court to be accomplished in the District Court, and it was one of the conditions of the bond that Ader surrender himself where the judgment and sentence were to be executed, namely, in the District Court. He failed to do so, and was in default at the time of the entry of the order of default against him in the District Court.

[2] 2. The contention is that this is merely a common-law bond, not covered by the provisions of section 1020 of the Revised Statutes but governed by the practice in Illinois, where the bond was given, and consequently by the practice at common law. The first Congress, September 24, 1789 (1 Stat. 81 [Comp. St. § 1239]), gave the courts of the United States power to issue writs of scire facias. That section is the basis of section 716 of the Revised Statutes (U. S. Comp. Stat. 1916, § 1239), so that from the beginning courts have had the power to issue writs of scire facias.

In United States v. Feely et al., Fed. Cas. No. 15,082, there was raised before Mr. Chief Justice Marshall, sitting as Circuit Justice, and District Judge Tucker, substantially the question here raised by the defendants, concerning the right to be exonerated on the bond of a defaulting defendant who afterwards appeared and at the time of the hearing was in custody. The contention of the United States was that the bond, being forfeited, had become a debt due to the United

States, which was no more subject to the control of the court than a debt upon contract. After examining the English law upon the question, and finding that at certain stages of the proceedings there was a discretion in the court, the Chief Justice said:

"If the accused has, under circumstances which show that there was no design to evade the justice of his country forfeited his recognizance, but repairs the default as much as is in his power, by appearing at the succeeding term, and submitting himself to the law, the real intention and object of the recognizance are effected, and no injury is done. * * * The reasonableness, then, of the excuse for not appearing on the day mentioned in the recognizance, ought to be examined somewhere, and no tribunal can be more competent than that which possesses all the circumstances of the original offense and of the default. Should the Legislature think otherwise, the case may be provided for by statute. At present, the law is understood to be that this court possesses full power over the subject."

That was in 1813. In 1839 the foundation for section 1020 of the Revised Statutes (now section 1684, U. S. Compiled Stats.) was laid by the passage of the Act of February 28, 1839 (5 Stat. 321), section 6 of which reads as follows:

"That, in all cases of recognizances in criminal causes taken for, or in, or returnable to, the courts of the United States, which shall be forfeited by a breach of the condition thereof, the said court for or in which the same shall be so taken, or to which the same shall be returnable, shall have authority in their discretion to remit the whole or a part of the penalty, whenever it shall appear to the court that there has been no *willful default of the parties,* and that a trial can notwithstanding be had in the cause, and that public justice does not otherwise require the same penalty to be exacted or enforced."

Later section 1020 was enacted with changes, some noted by our italics:

"When any recognizance in a criminal cause, taken for, or in, or returnable to, any court of the United States, is forfeited by a breach of the condition thereof, such court may, in its discretion, remit the whole or a part of the penalty, whenever it appears to the court that there has been no *willful default of the party,* and that a trial can, notwithstanding, be had in the cause, and that public justice does not otherwise require the same penalty to be enforced."

In United States v. Duncan, Fed. Cas. No.

15,004 (Dist. Ct. Western Division of Pennsylvania, 1863), a defendant made default and was captured and committed to prison by his bail. The question presented was upon the application made by one of the bail to be exonerated under the authority of section 6 of the act of 1839. In considering the following language of the court, the change above noted from "parties" to "party" must be remembered. The court said:

"If the willful default here mentioned was applicable to the act of the prisoner alone, the law would fail to extend relief to meritorious sureties, who, trusting in the integrity of the principal, were found in default, without any act or connivance on their part. The true construction of the act would seem to be that, where there is no collusion with the principal, no aid extended him to escape, or no effort made to defeat the ends of public justice, the court shall have power, in their discretion, to relieve the surety from the penalty of the recognizance."

Whether that decision had any influence upon the re-enactment of section 6, with changes, into section 1020, does not appear, but it does appear that "no willful default of the parties" in section 6 was changed to "no willful default of the party" in section 1020, so that since that change there is no discretion to exonerate under the terms of section 6. Those cases related to sureties on bonds for the appearance of the defendant for trial, and it is claimed that the practice is different on a supersedeas or appearance bond given in a Court of Appeals.

In Fidelity & Deposit Co. v. United States, 293 F. (5th C. C. A.) 575, the principal had defaulted and the sureties were seeking exoneration upon the bond. There was no surrender of the principal. The District Court said that the amended answer set forth no legal defense to the scire facias proceeding, that the court had no discretion, and the answer was stricken. The Court of Appeals said:

"In enacting that statute in its present form the words of the original statute (Act Cong. Feb. 28, 1839, § 6, 5 Stat. 322), 'no willful default of the parties,' were changed to 'no willful default of the party.' We are of opinion that the statute now in force does not authorize the court, in its discretion, to remit the whole or a part of the penalty, if it appears that the default of 'the party' is willful. Especially in view of the change in the wording of the statute when it was given its present form, we think that it cannot properly be so construed as to include

the surety as 'the party' whose innocence of willful default is made a condition of the authorized exercise of discretion by the court. This conclusion is well sustained by authority. Henry v. United States (C. C. A.) 288 Fed. 843; United States v. Smart, 237 Fed. 978, 150 C. C. A. 628; United States v. Robinson, 158 Fed. 410, 85 C. C. A. 520; United States v. Fabata (D. C.) 253 Fed. 586; United States v. Von Jenny, 39 App. D. C. 377."

Plaintiff in error supports her contention that the bond here is a mere common-law bond, and not covered by the provisions of section 1020, by Hudson v. Parker, 156 U. S. 277, 15 S. Ct. 450, 39 L. Ed. 424. The action there was upon a writ of mandamus to compel the judge of the United States District Court for the Western District of Arkansas to admit the petitioner to bail on writ of error from the Supreme Court, issued in 1894, the petitioner having been convicted by a jury of an assault with intent to kill, and being under sentence from the District Court to the penitentiary for a term of four years. Justice Brewer, assigned to the Eighth Circuit, being absent, Mr. Justice White, at his chambers in the city of Washington, indorsed upon the petition the following order:

"Writ of error, to operate as a supersede-as, allowed, returnable according to law, the defendant to furnish bond in the sum of five thousand dollars, conditioned according to law, subject to the approval of the district Judge. E. D. White,

"Justice Supreme Court of the United States."

It appears that a bond was presented, regular in all respects, and that the District Judge refused to approve it. The first question considered and decided was whether, under the circumstances, Mr. Justice White had the right to make the order. The court said:

"There can be no doubt, therefore, that under the acts of Congress, the decision of this court in Classen's Case, above cited [140 U. S. 200], and the first paragraph of rule 36, Mr. Justice White, although not the justice of this court assigned to the Eighth circuit, was authorized to allow the writ of error, to operate as a supersedeas, and to sign the citation."

The only remaining question was the validity of the order so far as regards admitting the prisoner to bail pending the writ of error. The order in that respect was also held valid. No question of practice upon a writ of scire facias to make sureties parties

to a defaulted recognizance against a principal was in any way involved in the case nor was it anywhere under consideration. Section 1020 was not referred to.

Sections 1014 to 1017, inclusive, were adopted in 1789. Section 1020 was adopted more than 50 years later. Sections 1018 and 1019 were adopted in 1846 (Comp. St. §§ 1682, 1683), so that from the fact that they appear together in the statute it does not necessarily follow that the earlier or later sections should in any way influence the interpretation of section 1020.

[3] Counsel for plaintiff in error quotes from section 1020 the following: "Whenever it appears to the court-that there has been no willful default of the party, *and that a trial can, notwithstanding, be had in the cause,"* etc.

The argument is that, by the use of the language italicized by plaintiff in error, Congress meant a trial in a court before a jury. That probably was the earlier meaning of the word, but long since the meaning of the word "trial" has been greatly broadened. In Wiscart v. Dauchy, 3 Dall. 321, 1 L. Ed. 619, Chief Justice Ellsworth said: "The act of 1789 speaks of appeal and writ of error, but does not confound them. They are to be understood according to their ordinary acceptation. *An appeal is a civil-law process, and removes a cause entirely subjecting the law and fact to a review and retrial."* See, also, Carpenter v. Winn, 221 U. S. 533, 31 S. Ct. 683, 55 L. Ed. 842; 8 Words and Phrases, 7095. It is a reasonable construction of the language to say that Congress meant that the defendant might be surrendered on the conditions stated, if the case against him could be proceeded with in any court, and we are of opinion section 1020 applies to all cases.

[4] 3. If section 1020 does not apply, plaintiff in error is not benefited, because counsel's theory as to what the common law was and what the law in Illinois is seems not to be well founded. Counsel cites Watson v. Bancroft, 35 S. C. Law (4 Strob.) 218, a civil case supported in the marginal note by 1 Tidd's Pr. 238; 1 Ld. Ray. 156; 3 East, 306. Counsel also cites Milner v. Petit, 1 Ld. Ray. 720. The cases cited in Lord Raymond's report were decided in 1696. Apparently they are both civil cases. The case at page 720 is brief, but refers to Wilmore v. Clerk and Howard, 1 Ld. Ray. p. 156, cited in Watson v. Bancroft, supra.

In the Wilmore Case there seemed to be much uncertainty as to what the practice was. There was an extended discussion of the question, the court saying, in part: "But all the admittances of these renders are ex gratia curiæ, and not ex merito justitiæ; * * * for the condition of the recognizance is broken by the nonrender upon the return of the capias ad satisfaciendum. And therefore these renders can never be pleaded, but the party must be relieved by motion."

In the Feely Case, supra, Fed. Cas. No. 15,082, the Chief Justice found 200 years later, that the common law was substantially embraced in section 1020. In Hudson v. Parker, 156 U. S. 277, 15 S. Ct. 450, 39 L. Ed. 424, supra, the court said: "Since the Act of June 1, 1872, c. 255, § 5, indeed, the practice, pleadings, and forms and modes of proceeding in actions at law in the Circuit and District Courts of the United States, are required to conform, as near as may be, to those existing at the time in like causes in the courts of record of the state within which they are held, any rule of court to the contrary notwithstanding. 17 Stat. 197."

Plaintiff in error urges that the practice in Illinois is under the common law and should be followed here, citing Gear v. Clark, 3 Gilman, 64. That was a civil case, and not governed by the common law, but by a statute of Illinois. The Supreme Court of Illinois, in Cleveland v. Skinner, 56 Ill. 500, 504, said: "The whole subject of the law, as to the steps to be taken, and by whom, to discharge bail by surrender of the principal, is settled by the provisions of section 5, chapter 14 of the Revised Statutes. Gear v. Clark, 3 Gilm. 64."

Section 5, Illinois Revised Statutes of 1845, p. 80, provides for bail in civil cases, whereas bail in criminal cases was provided for in chapter 30, p. 151, Illinois Revised Statutes of 1845, section 196 thereof providing for the surrender of defendants and release of sureties under conditions there stated. Counsel cite Pate v. People, 15 Ill. 221. By stipulation, the sole question before the court there was whether, in case of default by the principal, an action of debt could be maintained on the recognizance under appropriate averments, and, if so, what amount could be recovered. The court held that debt could be maintained, but that a surrender could be made on the conditions stated in chapter 30 of the Revised Statutes of 1845, citing Milner v. Petit, 1 Ld. Ray. 720, and State v. Folsom, 26 Me. 209. It appears that in the Maine case the proceeding was not under the common law, but under a statute of that state. In Commonwealth v. Green, 12 Mass. 1, also cited in the Pate Case, the

rights of the sureties were likewise governed by statute. See, also, Weese v. People, 19 Ill. 643, 646. Section 19 of the Public Laws of Illinois of 1869, p. 113, rewritten and appearing·in the Illinois Criminal Code (Cahill, Stat. 1921, c. 38, p. 1080), is very similar in its effect and purposes to section 1020 of the federal statute. It provides, in part:

"Before judgment the court may, in its discretion, set aside such forfeiture, upon the accused being brought or coming into open court, and showing to the court, by affidavit, that he * * * was unable to appear in court according to the terms of the recognizance, by reason of sickness or some other cause which shall satisfy the court that the accused had not been guilty of any laches or negligence: Provided, that no such forfeiture of a recognizance shall be set aside until the accused shall pay the costs of such recognizance."

The practice, then, in Illinois, is not as at common law, but under this statute, and the court is given the right to relieve against a forfeiture of a recognizance only upon conditions there stated. Plaintiff in error's plea did not show that she came within the provisions of either the federal or state statute, and the demurrer was properly sustained.

In United States v. McGlashen (C. C.) 66 F. 537, cited by the government, the question here presented was not decided.

The judgment is affirmed.