**104**

## UNITED STATES v. LEVINE et al.
### No. 4947.

District Court, E. D. New York.

July 11, 1932.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Frederick J. Peper, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

Joseph A. Solovei, of Brooklyn, N. Y., for Lexington Surety & Indemnity Co.

MOSCOWITZ, District Judge.

This is a motion by the Lexington Surety & Indemnity Company for the following relief: "For an order opening default of defendant herein, remitting the forfeiture, vacating and setting aside judgment herein, and vacating and setting aside writ of scire facias herein, on the ground that no damage has been suffered by the United States of America, and for such other, further and different relief as to the Court may seem just and proper in the premises."

Similar motions were made by the same surety company in two actions entitled United States of America, Plaintiff, v. Mike Delio, also known as Mike Dellio and Lexington Surety & Indemnity Company, Defendants, No. L–4817, and United States of America, Plaintiff, v. Bennie Badash, also Known as Ben Badash, and Lexington Surety & Indemnity Company, formerly Known as Grand Central Surety Company, Defendants, No. L–4946.

Defendant Abraham Prussick is the same defendant in each of the actions, having used the aliases Max Levine, Mike Delio, and Bennie Badash.

The motion as originally made was based upon the affidavit of Mr. Kestler, the attorney for the surety company, verified June 6, 1932. The affidavits are almost identical in the three motions. The material portions of the affidavit of Mr. Kestler are upon information and belief, the source of his information and grounds of the belief are not stated.

Mr. Kestler in his affidavit states that he was informed that the defendant never received notice to appear for pleading, but upon receipt of notice thereafter of his default, Levine voluntarily appeared June 1, 1932, before Judge Byers, and was to be sentenced on June 8, 1932.

After serving the motion papers, another attorney has been substituted in place of Mr. Kestler for the surety company. An affidavit has been submitted to the court by Abraham Prussick, verified June 23, 1932. This affidavit contains the statement that Prussick never received notice to appear in this court for pleading.

On January 26, 1932, a notice was mailed by the United States attorney to Bennie Badash at premises 25 East 109th street, New York City, which was the address given by the defendant under that name at the time of his arrest, which notice required him to appear on February 3, 1932, for pleading. On the same day a notice was mailed to Max

Levine at 35 Clinton street, New York City, which was the address given by the defendant under that name at the time of his arrest, requiring him to appear on the same day, to wit, February 3, 1932, for pleading. On October 6, 1931, a notice was mailed to Mike Delio at 516 Seventy-Eighth street, Brooklyn, which was the address given by the defendant under that name at the time of his arrest, requiring him to appear on October 13, 1931 for pleading. These three notices were returned to the United States attorney's office by the Post Office Department, the first two envelopes being marked, "Not found," and the third one being marked, "Unknown at address."

It is readily understandable why the defendant did not receive these notices. It was due to his misconduct in repeatedly giving fictitious names upon each arrest. Had the defendant given his true name and correct address, he would have received the notices in time for pleading; but he gave a fictitious name and incorrect address for the purpose of concealing the fact that he was the defendant named in the three cases.

It appears that in each instance the same surety company bailed the defendant under his various fictitious names, and that Agent Joseph Tighe bailed the defendant as Mike Delio and Bennie Badash, and that Agent J. Forman bailed him as Max Levine. It does not appear that the defendant was unknown to the agents of the surety company, due to the fact that defendant has only one arm, and it appearing that the defendant was arrested in each instance at the same premises, 7904 Fifth avenue, Brooklyn. It was only after the bonds were forfeited, a bench warrant issued and returned by the marshal who was unable to locate the defendant, due to his fictitious names and addresses, and that judgments were entered, that the defendant was produced before the court.

It appears that the defendant Prussick was also arrested under the names of Nat Silver, Nat Silvers, and Morris Cohen. As Nat Silver he pleaded guilty to the charge of possession of gin and maintenance of a nuisance and in addition to ten days' suspended sentence was placed on probation for one year to report as directed, and in the course of that year during which he was on probation, he was arrested as Morris Cohen and also under the three names Mike Delio, Bennie Badash, and Max Levine, which is the subject of the three actions in which these motions were made.

It is urged with seriousness and perhaps with some merit that a defendant who appears in court and gives fictitious names is guilty of contempt of court. However, that question is not before the court. Certainly upon an application to remit the penalty under a bail bond where a defendant has constantly given fictitious names with the knowledge of the agents of the surety company, and has willfully defaulted, the Court should not open such defaults.

The surety company requests relief under title 18, United States Code, § 601 (18 USCA § 601), which reads as follows: "§ 601. *Remission of penalty of recognizance.* When any recognizance in a criminal cause, taken for, or in, or returnable to, any court of the United States, is forfeited by a breach of the condition thereof, such court may, in its discretion, remit the whole or a part of the penalty, whenever it appears to the court that there has been no willful default of the party, and that a trial can, notwithstanding, be had in the cause, and that public justice does not otherwise require the same penalty to be enforced."

The fact that the defendant appeared after default will not of itself relieve the surety company from liability. McGlashan v. United States (C. C. A.) 71 F. 434; United States v. Graner (C. C.) 155 F. 679. The use of the words "willful default of the party" in section 601, title 18, United States Code (18 USCA § 601), refers to the willful default of a defendant and not the surety company. In this connection Judge Manton, in a concurring opinion in the matter of United States v. Kelleher et al. (C. C. A.) 57 F.(2d) 684, 686, said: " 'Willful default' of the party means willful default of principal, or the defendant, and not the surety. This has been uniformly held by the Circuit Courts of Appeals and the Court of Appeals of the District of Columbia. The reasons which are stated in such opinions sufficiently express my views. They are right in principle and in the construction of the statute. The judgment should be reversed on these authorities. United States v. Costello, 47 F.(2d) 684 (C. C. A. 6); United States v. Amer. Bonding Co., 39 F.(2d) 428 (C. C. A. 9); Weber v. United States, 32 F.(2d) 110 (C. C. A. 8); Skolnik v. United States, 4 F.(2d) 797 (C. C. A. 7); Fidelity & Deposit Co. v. United States, 293 F. 575 (C. C. A. 5); Henry v. United States, 288 F. 843, 32 A. L. R. 257 (C. C. A. 7); United States v. Robinson, 158 F. 410 (C. C. A. 4); United States v. Walter,

43 App. D. C. 468; United States v. Allen, 39 App. D. C. 383; United States v. Von Jenny, 39 App. D. C. 377."

█ The statute gives the court discretion—that means judicial discretion—to remit the whole or part of the penalty whenever it appears to the court that there has been no willful default of the party (the defendant).

█ The proof is convincing that the default of the defendant was willful and deliberate and that he gave fictitious names for the purpose of escaping the consequences of his own acts.

█ A stipulation has been submitted that the forfeiture be remitted upon payment of $250 in each case. Considering the fact that the defendant has pleaded guilty and there has been a disposition of the actions, the surety company will be permitted to pay $250 in each action.

The practice of opening defaults on payment of a small sum is not to be commended, and were it not for the fact that there has been such practice the surety company would not be relieved of its defaults. The small amount of $250 allowed to be paid shall not be regarded as a precedent, and in an instance where there has been a willful default and the government has not been damaged if such default is opened it should be upon the payment of a substantial sum.

Settle order on notice.