### KURTZ v. BROWN.

(Circuit Court of Appeals, Third Circuit. February 4, 1906.)

#### No. 24.

DISCOVERY—BILL OF DISCOVERY—DEFENSES.

Where an assessment has been duly ordered by a court on the shares of stock of an insolvent corporation which were not fully paid up, the receiver for the corporation, having a right of action at law against an owner of such shares to recover the assessment thereon, may maintain a bill of discovery against a broker who bought such shares for an undisclosed principal, and at the latter's instance had them transferred into the name of an irresponsible person for the purpose of concealing the real ownership, to compel him to disclose such ownership.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Discovery, § 9.]

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

See 134 Fed. 663.

R. M. Schick, for appellant.

Reynolds D. Brown, for appellee.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

BUFFINGTON, Circuit Judge. This is an appeal from the Circuit Court for the Eastern District of Pennsylvania. In that court, Brown, the receiver of the American Alkali Company, filed a bill against Kurtz and Magee, to discover the names of the owners of certain stocks registered by Kurtz in the name of Magee, and against which persons complainant proposed to bring suits at law to recover unpaid assessments thereon. To this bill Kurtz demurred. This demurrer was overruled, and the case heard on bill and answer. Magee, the other respondent, did not appear or answer. A decree was entered directing respondents to make the discovery prayed for. From such decree Kurtz appealed.

From the bill it appears the American Alkali Company was a manufacturing corporation created by the state of New Jersey. It had 480,000 shares of common stock, full paid, and 120,000 shares preferred stock. Certificates for the preferred stock were issued, "$10 per share being paid on account of the par value of $50 by the original subscribers thereto, and the balance of $40 per share remained unpaid and subject to call." The company becoming insolvent, Brown and one Budd, since deceased, were duly appointed receivers thereof by the Circuit Court for the District of New Jersey and also in ancillary proceedings by the Circuit Court for the Eastern District of Pennsylvania. By order of the first-named court an assessment was levied by the receiver on September 19, 1905, on the holders of the said preferred stock of $2.50 per share, for the purpose of paying the debts of the company and the expenses of the receivership. On said date 3,700 shares of said preferred stock were registered in the name of Magee, one of the respondents. The bill then alleges:

"That said Henry G. Magee is not and never was the real owner of the said 3,500 shares of the preferred stock of said American Alkali Company, or any of them, but that they were purchased by the said W. Wesley Kurtz, trading as W. W. Kurtz & Company, for the purpose of concealing the names of the real owners thereof. That W. Wesley Kurtz was, on November 17, 1900, engaged in the business of buying and selling stock in the Philadelphia Stock Exchange, and 3,700 shares of American Alkali Company's preferred stock had been bought by him for clients of his, and it was for their benefit that with the consent of the said Magee he directed the agents of the American Alkali Company to issue the new certificates on November 17. 1900, in the name of said Magee. That your orator is advised that the person or persons for whose account the said 3,700 shares were purchased and placed in the name of Henry G. Magee are personally liable for the amount of said assessment."

It is conceded by counsel that unless the ruling of this court in Brown v. McDonald, 133 Fed. 897, 67 C. C. A. 59, 68 L. R. A. 462, is reversed, the decree entered below must be affirmed, and that this appeal was taken that this court might review and overrule that case. In view of the earnest and able contention of counsel, we have considered the questions involved anew; but this examination has deepened our conviction that the decision in Brown v. McDonald, as an

application of equitable principles to the facts of the case, was wholly in accord with well-recognized principles of chancery jurisdiction. It exhibits the capacity of the law, while adhering firmly to precedents of far-removed times, to adapt itself to new conditions. Our reasons for adhering to that decision we will briefly state. And first, let the facts in the case before us be clearly appreciated, for each case of equitable relief is decided, and its pertinence as a precedent thereafter depends, on the particular facts thereof. We note that the question of the final liability of the persons against whom the receiver proposes, after discovery, to bring suit, is not before us, and we express no opinion thereon. But as touching the questions before us we do note the facts that there are unpaid assessments duly made on the shares in question; that the persons of whose names discovery is sought own such shares; that the receiver has a right of action against them for such assessments; that Kurtz was the agent of these concealed purchasers, hired by them to buy such shares; and to conceal their identity they had certificates issued to an irresponsible person to escape liability for assessments. Now that by the purchase and ownership of stock in this company the owner assumed payment of unpaid assessments will not be or at least in this case is not questioned. But the actual owner here seeks by the act of his agent to vest ownership in himself, and at the same time divest the liability incident to such ownership. For one to falsely assume ownership of property not his own in order to obtain money from another is fraudulent. It may well be asked whether the converse thereof, viz., for one falsely to assume nonownership of his own property in order to withhold money from another is any less so. Now this bill is not against a mere stranger who casually discovers the identity or liability of another; but, be it observed, we are dealing, through an admitted agent who has actively forwarded his principal's purpose, with that hidden principal himself, for "qui facit per alium facit per se." Here then, we have a receiver with an unquestioned right against another, and that other subject to an unquestioned liability to the receiver and a court of law by its own process, powerless to enforce the liability. But the law's extremity is equity's opportunity. "Early in the history of our jurisprudence the administration of justice by the ordinary courts appears to have been incomplete, and to supply the defect courts of equity have extended their jurisdiction. * * * The courts of equity also administered to the ends of justice by removing impediments to a fair decision of a question in other courts, * * * and, without pronouncing any judgment on the subject, by compelling a discovery, or procuring evidence, which may enable other courts to give their judgment." Mitford's Pleading and Practice in Equity, p. 101. Now the present case is one, which, in accord with these principles, demands equitable relief to enable a law court to enforce complainant's unquestioned right, and the remedy sought is one which equity favors and invokes for that very purpose. "Bills of discovery," says Snell in his Principles of Equity, p. 485, "are greatly favored in equity, inasmuch as they tend to assist and promote the administration of justice in others, and will be sustained in all cases where some well-founded objection does not exist against the exercises of this jurisdiction."

To the same effect is 2 Story's Equity Jurisprudence, § 1488, where it was said:

"As the object of this jurisdiction in cases of bills of discovery is to assist and promote the administration of public justice in other courts, they are greatly favored in equity, and will be sustained in all cases where some well-founded objection does not exist against the exercise of the jurisdiction. We shall therefore proceed to the consideration of some of the circumstances which may constitute an objection to such bills, leaving the reader silently to draw the conclusion that if none of these nor any of the like nature intervene, the jurisdiction to compel the discovery sought will be strictly enforced."

Now, none of the 12 principal grounds enumerated by Justice Story for resisting a bill for discovery in aid of law preclude relief in this case. True, he states it is ordinarily a good objection to a bill of discovery that it seeks the discovery from a mere witness who has no interest in the suit. Unless, therefore, Kurtz stands in the relation of a mere ordinary witness to the cause there would seem to be no ground for denying complainant relief. That he is a witness and not a party is clear in that no relief, other than mere discovery, is sought against him; but that he has by his conduct so connected himself with the subject-matter of the proposed suit that he is treated as wholly different from a mere witness is equally clear. In Orr v. Diaper, 4 Ch. Div. 92, a bill was brought by the owner of a trade-mark against ship-owners who were mere forwarders of goods intended to counterfeit complainant's trade-mark. It was there contended such shipowners were mere witnesses and that complainant had no title to sue them. This contention was not sustained, and it is not without significance, as showing how firmly grounded the right of discovery in aid of a proposed action at law had become in English jurisprudence, that counsel for the bill were not called upon to answer. The court said:

"The plaintiffs state that they seek discovery in aid of other proceedings; and for the defendants it is contended that they cannot mean to take any proceedings against them, as they could do that without having the names of other persons. The plaintiffs, however, want to bring their action against those persons for whom the defendants have shipped goods with counterfeit marks. It has been submitted that the defendants are mere witnesses; but their position, they being actual shippers, is different from that of mere witnesses. I think the plaintiffs do show a title to sue. * * * In this case the plaintiffs do not know and cannot discover who the persons are who have invaded their rights, and who may be said to have abstracted their property. These proceedings have come to a deadlock, and it would be a denial of justice if means could not be found in this court to assist the plaintiffs."

If the relation of a shipowner, a mere forwarder of goods, so connects him with the transaction that he is regarded as other than a witness, there can be no question that Kurtz, the active agent to conceal the identity of the owners of this stock, is not to be regarded as a mere witness.

Great stress is laid, and rightly so, on Tweils v. Costen, 1 Pars. Eq. Cas. (Pa.) 373; but the facts on which that case was decided are so wholly different from the present one that apart from being both bills for simple discovery, they have nothing in common. In that case there was a public sale of land with a requirement of a deposit by an accepted bidder. Costen's bid was accepted, and he paid the required deposit as the approved purchaser. It will be noted he did nothing

to mislead, deceive, or wrong any one; but, on the contrary, by his purchase and by subscribing the agreement of sale, he assumed liability for the unpaid purchase money. His conduct showed good faith and fair dealing on his part. The whole trouble was that he was not financially able to comply with his bid, and thereupon the vendor, whose mistake was in accepting him, sought to discover whether he had not a responsible principal behind him. Here was manifestly a fishing bill of most objectionable character. There was no definite allegation that there was such a principal, and a statement of a right of action against any one made. Manifestly a decision that discovery would not be ordered upon such facts is not controlling on a state of facts where an actual though unknown principal has, by the services of a conceded agent, avoided all responsibility on the part of both, and has created a condition such that the creditors of this company are deprived of unchallenged legal rights against the owner of the stock. In Twells' Case, Costen was guilty of no act of commission or omission which deprived the plaintiff of any right. In the case in hand, there are positive, furtive acts, intended to and, if shielded by a court of equity, effective to deprive another of clear legal rights. Judged on its facts Twells v. Costen is no barrier to the grant of relief in the present case. In Hathcote v. Fleete, 2 Vern. 442, in Morse v. Buckworth, Id. 443, in Moodaly v. Norton, 2 Dick. 652 (where it will be noted the Master of the Rolls said: "In ordinary cases, it is usual in this court to grant discovery, auxiliary to a court of law), in Orr v. Diaper, supra, and in Post v. Toledo, 144 Mass. 341, 11 N. E. 540, 59 Am. Rep. 86, as stated in Brown v. McDonald, supra, we heretofore found warrant to support this bill. To these we now add Marsden v. Panshall, 1 Vern. 407. That was a bill by the owner of goods intrusted to a factor for sale to compel a pawnee of them to discover whether they came into his possession from the factor, in order to enable the owner to bring an action against the latter. The bill was sustained, and the pawnee ordered to exhibit the goods, "the meaning of which was, and it was so taken by the court, that the plaintiff should thereby be enabled to bring an action at law." Now in none of those cases except Moodaly v. Norton had the respondent done any act which aided in concealing the identity of the person or in working any wrong to the complainant. In the report of Moodaly v. Norton, 1 Brown's Rep. 412, where, as noted above in 2 Dick. 652, a bill was sustained, it was said:

"But here is a prima facie ground of action; the company (the respondent) has put other persons in the way of doing the plaintiff an injury."

The positive acts of Kurtz, the present respondent, in thwarting complainant in the enforcement of his plain legal right has been noted above and brings this case directly in line with Moodaly v. Norton. He has put the unknown principal in the way of doing complainant injury. To treat an active party in effecting such a result as a party in interest is in line with the principle laid down in 2 Atk. 234, Mitford, 153, that:

"In case of fraud a party to the fraud cannot assert his want of interest in the subject."

While the cases in the Reports are few in number, yet the use of a bill for discovery simply seems well established in English jurisprudence. Hindman v. Taylor, 2 Brown's Rep. 10, was a bill for discovery on which to found a suit at law. The case was heard twice and evidently carefully considered. It is significant that no question was raised of the right to maintain such a bill (as was also the case in Orr v. Diaper, supra); but the effort was to defeat it by a plea of facts which would have also defeated the action at law. The plea was over-ruled, and the bill sustained, Lord Thurlow saying:

"This is a case where he (the complainant) has no election. He must sue at law. The dry question is this, whether there is any objection, in natural justice, to a defendant giving a discovery in order to found a relief at law."

The opinion in Brown v. McDonald states we are not willing to hold that the federal statutes affording discovery relief have supplanted relief by bill of discovery. While no authorities are there cited there is no lack of them and reference is made to Snell's Principles of Equity, 487; British Empire Shipping Co. v. Sombs, 3 K. & J. 433; Lovell v. Galloway, 17 Beavan, 1; McMullin Lumber Co. v. Strothers, 136 Fed. 301, 69 C. C. A. 433; Kelley v. Boettcher, 85 Fed. 56, 29 C. C. A. 14; Ryder v. Bateman (C. C.) 93 Fed. 31; Indianapolis Gas Co. v. Indianapolis (C. C.) 90 Fed. 196. Manifestly such statutes are remedial and enlarging in their nature. They apply to courts of law and are not intended to affect courts of equity or sheer them of recognized powers. The decision of Brown v. McDonald made possible the enforcement of just liabilities, was supported by precedent, and will not be disturbed by this court.

Judgment affirmed.