Jo Gill, Trustee, *et al.,* v. M. A. Smith, as Liquidator of of the Bank of Sarasota.

157 So. 657.

(Two Cases.)

Opinion Filed November 9, 1934.

Rehearing Denied December 11, 1934.

*John F. Burket* and *J. D. Gill,* for Appellants;

*Randolph Calhoun, Robert R. Milam* and *D. V. Rouse,* for Appellee.

BUFORD, J. —This suit was instituted by a bill of complaint seeking discovery of facts concerning the ownership

of certain shares of bank stock which were outstanding at the time the bank became insolvent and was placed in the hands of the Liquidator and to procure an adjudication against the defendants for the amount which should be ascertained to be due by them, or either of them, to the bank under the statutory liability applying to them as holders and owners of capital stock in the bank at the time of its failure.

The bill of complaint alleges all of the facts constituting the prerequisites to the right of the Liquidator to maintain the suit. The case falls outside the usual cases which are instituted for the purpose of discovery because the allegations of the bill show that the complainant is a Liquidator acting on behalf of both stockholders and creditors of a defunct bank and the defendants each and all, occupied positions of officers and directors of the bank at the time the bank was closed.

The bill shows that at the time the bank closed there appeared to be outstanding in the name of the defendant, Jo Gill, 592 shares of the capital stock of said bank at the par value of $100.00 per share. The record showed that these shares of stock were held in the name of "Jo Gill, *Trustee.*" It shows that the Liquidator applied to Jo Gill and the other defendants for full information concerning the real legal ownership of such shares of stock and that Jo Gill, as president of the bank and as holder of the stock, and that the other defendants, as officers and directors of the bank, failed and refused to give the Liquidator that information. When the bank went into liquidation a fiduciary relation was created between the Liquidator and the officers of the bank and it became the duty of such officers of the bank to truly, correctly and fully advise the Liquidator in regard to all matters which would facilitate liquidation of the bank and especially was it their duty to advise the Liquidator as

to the true legal or beneficial ownership of any and all shares of stock in the institution. Under this state of facts the same nicety in pleading is not required which would be required where one goes into a court of equity to compel discovery of an adversary with whom he occupies no fiduciary relation and who is under no legal requirement to divulge information beneficial to the complainant and injurious to the defendant.

The allegations above referred to, together with the allegation that from his investigation the Liquidator believes that the defendants named are the beneficial owners of the stock and that the stock was taken in the name of Jo Gill, Trustee, at a time when Jo Gill was president of the bank for the purpose of concealing the identity of the true beneficial owners and of avoiding the statutory liability accruing against such owners upon an assessment being made by the Comptroller against the holders and owners of the capital stock of the defunct bank are sufficient to warrant a court of equity in assuming jurisdiction and requiring the defendants to divulge whatever they may know about the true beneficial ownership of such capital stock, and, upon ascertaining the identity of such ownership, to grant a decree requiring such true beneficial owners to respond to the assessment made by the Comptroller. See Campbell v. Knight, 92 Fla. 246, 109 Sou. 577. See also McCarthy's 1931 Chancery Act of Fla., Annotated, page 108, *et seq.* The case of Brown v. McDonald, 133 Fed. 897, 68 L. R. A. 462, is a case quite analogous to the case at bar. In that case the United States Circuit Court of Appeals of the Third Circuit said:

"It is urged on behalf of the appellees, first, that a bill of discovery merely in aid of purely legal right is no longer maintainable in a court of the United States; and, second,

that if such a bill can now be maintained in a Federal Court this is not a case in which such a bill is allowable. In support of the first of these propositions we are referred to what was said against the maintenance as a general rule of a bill solely for the sake of discovery, by Mr. Justice BREWER, when sitting at circuit in Preston v. Smith (C. C.) 26 Fed. 884, 889, and to what was said by the Circuit Court of Appeals for the Fourth Circuit in Safford v. Ensign Mfg. Co., 120 Fed. 480, 56 C. C. A. 630. Now, undoubtedly, Section 724 of the Revised Statutes (page 583, U. S. Comp. St. 1901), which empowers the Courts of the United States in actions at law to require the parties to produce books and writings, and Section 858 (page 659), which makes the parties to a suit at law competent witnesses therein, have removed the necessity of resorting to bills of discovery in ordinary cases, but we are not willing to hold that the statutes have altogether abolished the equitable remedy by bill of discovery. Moreover, this bill is not for the mere discovery of evidence to be used in a trial at law, but it is to ascertain the names of persons against whom intended suits are to be brought to enforce alleged legal claims. There are precedents for such bills of discovery, although the cases are of rare occurrence.

"Perhaps the earliest cases sustaining the right to file a bill of discovery to ascertain the proper persons to make defendants in a proposed suit at law are Heathcote v. Fleete, 2 Vern. 442, and Morse v. Buckworth, 2 Vern. 443. In the former of these cases the bill was to discover who was the owner of a wharf and lighter, to enable the plaintiff to bring an action for damages to his goods by the lighter's being overset by the negligence of the lighterman; and in the latter case the plaintiff, a freighter whose goods were burned by the negligence of the master or crew of a

carrying ship, brought his bill to discover who were part owners of the ship, to enable him to bring an action. In each of these cases the defendant demurred, but the demurrer was overruled. Another early case in which a like bill of discovery was held good on demurrer was Moodaly v. Moreton, 2 Dick. 652, in which the purpose of the will was to enable the plaintiff to ascertain whom to sue at law for his wrongful ouster from leased premises. In the recent case of Orr v. Diaper, 4 Chan. Div. (Law Rep.) 92, it was held that a suit would lie against shipowners who had shipped goods bearing counterfeits of the plaintiff's trademark for discovery of the names of the consignors from whom the goods were received, in aid of contemplated proceedings against the wrongdoers. In overruling a demurrer the Vice-Chancellor well said:

" 'In this case the plaintiffs do not know, and cannot discover, who the persons are who have invaded their rights, and who may be said to have abstracted their property. Their proceedings have come to a deadlock and it would be a denial of justice if means could not be found in this court to assist the plaintiffs.'

"In 2 Story's Equity, Jur. No. 1483, it is said that while in general it seems necessary in order to maintain a bill of discovery that an action should be commenced in another court to which it should be auxiliary, 'there are exceptions to this rule, as where the object of discovery is to ascertain who is the proper party against whom the suit should be brought.'

"The case of Post & Company v. Toledo, etc., Railroad Co., *et al.,* 144 Mass. 341, 346, 11 N. E. 540, 59 Am. Rep. 86, is a pertinent citation in support of the present bill. There a bill in equity was filed to obtain from the defendants discovery of the stockholders in an Ohio corporation

in order that the plaintiff might institute a suit in the courts of Ohio against them to collect a judgment which the plaintiff had obtained against the corporation. In overruling a demurrer to the bill the court said:

" 'The present case must be determined by the principles declared in the few cases where the plaintiff does not know the names of the persons against whom he intends to bring a suit, and brings a bill against persons who stand in some relation to them or to their property, in order to discover who the persons are against whom he may proceed for relief.'

"We think that the case in hand comes within the principle common to all the foregoing cited decisions. The specific purpose of this bill is to discover who are the real owners of corporate stock alleged to be registered in the name of a nominal holder. Upon the averments of the bill the defendants are not mere witnesses. The bill charges that the defendants, Sparks and Wynn, purchased the 1,100 share of preferred stock for account of persons unknown to the plaintiff, and placed the same in the name of McDonald, the other defendant, for the purpose of concealing the names of the real owners. Under this allegation the defendants stand in confidential relation to the persons for whom the stock was purchased and for whom it is held. The bill also alleges that the plaintiff is advised (presumably by counsel learned in the law) that the persons for whom the said 1,100 shares were purchased and placed in the name of McDonald are personally liable for the payment of the assessment here in question. The plaintiff is proceeding as surviving receiver of the America Alkali Company, and agreeably to the order of the Circuit Court, directing the receivers to collect from the holders of the preferred stock of the said corporation, for the purpose of paying its debts, the unpaid balance of said assessment."

In the case of Kurtz v. Brown, 152 Fed. 372, 11 Annotated Cases 576, the Court said:

"It is conceded by counsel that unless the ruling of this Court in Brown v. McDonald, 133 Fed. 897, 67 C. C. A. 59, 68 L. R. A. 462, is reversed, the decree entered below must be affirmed, and that this appeal was taken that this Court might review and overrule that case. In view of the earnest and able contention of counsel, we have considered the question involved anew; but this examination has deepened our conviction that the decision in Brown v. McDonald, as an application of equitable principles to the facts of the case, was wholly in accord with well recognized principles of chancery jurisdiction. It exhibits the capacity of the law, while adhering firmly to precedents of far-removed times, to adapt itself to new conditions. Our reasons for adhering to that decision we will briefly state. And first, let the facts in the case before us be clearly appreciated for each case of equitable relief is decided, and its pertinence as a precedent thereafter depends, on the particular facts thereof. We note that the question of the final liability of the persons against whom the receiver proposes, after discovery, to bring suit, is not before us, and we express no opinion thereon. But as touching the questions before us we do note the facts that there are unpaid assessments duly made on the shares in question; that the persons of whose names discovery is sought own such shares; that the receiver has a right of action against them for such assessments; that Kurtz was the agent of these concealed purchasers, hired by them to buy shares; and to conceal their identity they had certificates issued to an irresponsible person to escape liability for assessments. Now that by the purchase and ownership of stock in this company the owner assumed payment of unpaid assessments will not be or at

least in this case is not questioned. But the actual owner here seeks by the act of his agent to vest ownership in himself, and at the same time divest the liability incident to such ownership. For one to falsely assume ownership of property not his own in order to obtain money from another is fraudulent. It may well be asked whether the converse thereof, viz., for one falsely to assume non-ownership of his own property in order to withhold money from another is any less so. Now this bill is not against a mere stranger who casually discovers the identity or liability of another; but, be it observed, we are dealing, through an admitted agent who has actively forwarded his principal's purpose, with that hidden principal himself, for '*qui facit per alium facit per se*.' Here then we have a receiver with an unquestioned right against another and that other subject to an unquestioned liability to the receiver and a court of law by its own process, powerless to enforce the liability. But the law's extremity is equity's opportunity. 'Early in the history of our jurisprudence the administration of justice by the ordinary courts appears to have been incomplete, and to supply the defect courts of equity have extended their jurisdiction.' "

See also Carpenter v. Wynn, 221 U. S. 533, 55 Law Ed. 842; Pressed Steel Car Co. v. Union Pac. Co., 240 Fed. 135; Brown v. Magee, 146 Fed. 765; Huey v. Brown, 171 Fed. 641.

That the complainant is entitled to a decree for more than mere discovery is settled by the opinion in the case of Campbell v. Knight, *supra*, in which this Court said:

"All bills in equity are, in a sense, bills for discovery, but a pure bill of discovery is usually brought to obtain the disclosure of facts within the defendant's knowledge, or of deeds or writings or other things in his custody, in aid of

the prosecution or defense of an action pending or about to be commenced in some other court. It is most commonly used in aid of a defense or prosecution of an action at law. 6 Ency. Pl. & Pr. 731.

"Courts of equity which have once obtained jurisdiction for purposes of discovery will dispose of a cause finally if proper for the consideration of equity though the remedy at law is fully adequate. 1 Story Eq. Jr. 64K; Chichester v. Vass, 1 Munf (Va.) 98, 4 Am. Dec. 531; Traip v. Gould, 15 Me. 82; Wood v. Hudson, 96 Ala. 469, 11 South. Rep. 530."

See also Phiel v. Williams, 64 Fla. 387, 59 Sou. 897, citing Thrasher v. Doig, 18 Fla. 809; Procter v. Hearne, 100 Fla. 1180, 131 Sou. 173.

It is contended that in a bill of complaint seeking discovery it is necessary when the right is based on facts of which the complainant only has information and belief, the allegations must be that the complainant is informed and believes certain facts to be true and thereupon avers them to be true. This contention may be well founded insofar as it states a general rule, but we conceive it to be true that there are exceptions to that rule. We should look to substance and not to form. In this case the allegation is framed as follows:

"Orator further alleges that the 592 shares hereinabove charged about, of the capital stock of said Bank of Sarasota, in your orator's opinion and belief, at the time of the closing of said bank and the appointment of your orator as its liquidator, as aforesaid, were outstanding, issued by the bank and held by Jo Gill, as trustee for the defendants aforesaid, John Ringling, A. E. Cummer, E. H. Albee and Joe Gill, some of them, or all of them, the real parties in interest, owners thereof, being co-partners, joint adven-

turers or joint owners in the entire 592 shares, or the real parties in interest, owners thereof, being separate owners of a specified part or pro rata part of said 592 shares, and as a *consequence* of either of such ownership *your orator alleges that the real owners of the stock so held by said Trustee are liable for the par value amount of his ownership thereof,* and if the ownership is as joint adventurer, co-partner or joint owner, then the liability exists against each of such owners for the full par value amount of the entire 592 shares." (Italics supplied.)

Further in the bill it is positively alleged as follows:

"And your orator further charges that each of the persons sued in this bill, as the real owners of said stock, knows the exact nature, conditions and amount of such ownership and the terms and the conditions of the trust created in the said Joe Gill over said stock, and each of said persons was at the time of the closing of said bank as aforesaid, and still is, a member of the board' of directors thereof, and as such it is their duty to disclose to your orator, as its liquidator, the full knowledge had by them concerning such trusteed stock, its ownership, etc."

Therefore, we have in substance all that is required in a case presenting factual conditions such as these.

We have two appeals here under consideration. The first was from an order denying motion to dismiss the bill of complaint and order overruling objections to certain interrogatories. What is said heretofore refers to that appeal.

The other appeal is from an order in the same case directing subpoena *duces tecum* to issue to the defendants requiring them to present certain documents for examination at a time and place named. This order was entered pursuant to a decree *pro confesso,* having been entered against the defendants. The contention is that the decree

*pro confesso* should not have been entered after a notice of appeal was filed challenging the correctness of the order denying ·motion to dismiss the bill of complaint and the order overruling objections to· certain interrogatories, although no order of supersedeas had been obtained.

We deem it unnecessary to discuss this contention at length. It is fully discussed and the law relative thereto settled in this jurisdiction by the opinion and judgment in the case of Crichlow, *et al.*, v. Maryland Casualty Co., opinion filed June 27, 1924, not yet reported. In that case we said:

"Now the orders of the lower court, the entry of decree *pro confesso,* the order of reference· and final decree all made after the appeal from the order overruling the demurrer and before the order of supersedeas was entered, assuming the latter to be valid, were all within the power of the lower court and they did not tend to impair or interfere with the appellate jurisdiction and power of the Supreme Court or to defeat the efficiency of appellate proceedings already taken. Such proceedings, however, were subject to the order or decree made on the appeal taken from the interlocutory order."

From what we have said, it follows that both orders appealed from should be affirmed and the cause remanded for further proceedings.

It is so ordered.

Affirmed and remanded.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL and BROWN, J. J., concur.